THOMAS, J.,
for the court.
¶ 1. Linda Klauser filed for divorce in the Chancery Court of Lee County on the grounds of adultery against Harry Klau-ser, D.V.M. A divorce was awarded, and a division of marital assets was entered along with an award of alimony and attorney’s fees to Linda. Aggrieved, Harry asserts the following on appeal:
I. THE COURT DID NOT ADEQUATELY FOLLOW THE FACTORS SET FORTH BY THE MISSISSIPPI SUPREME COURT AND AWARDED AN EXCESSIVE AMOUNT OF ALIMONY.
II. THE INTENTIONS OF THE COURT WERE TO MAKE AN EQUITABLE DIVISION OF THE MARITAL ASSETS TO THE PARTIES REQUESTING THE DIVORCE.
III. THE COURT ERRED IN FINDING THAT LINDA HAS AN INABILITY TO PAY THE ENTIRE AMOUNT OF ATTORNEY’S FEES.
Finding no error, we affirm.
FACTS
¶ 2. Harry and Linda Klauser were married in June of 1970. At the beginning of the marriage Linda worked to support the marriage while Harry was in school for veterinary medicine. The two moved to Tupelo after Harry’s graduation from school where they borrowed money from Linda’s parents to open a veterinary clinic. This was the source of the family income as both of them worked at the clinic until Linda began teaching about fifteen years ago.
¶ 3. In December of 1999, Harry approached Linda and informed her that he wanted a divorce because he had been having a long term affair with an employee and as a consequence the paramour had become pregnant. A few days later Harry moved out of the marital domicile.
¶ 4. Harry has been the primary provider for the family since his graduation from veterinary school. The chancellor determined that neither Harry nor Linda had any assets before the marriage and that all assets in question were those of the marriage. The two had two children both of which are over the age of majority evincing no need for custody proceedings.
¶ 5. The chancellor found that the parties owned four pieces of property that were appraised and subject to distribution, including the marital home appraised at $96,000; the veterinary practice realty, appraised at $310,000; the veterinary practice, appraised at $133,000; and a cabin valued at $27,500. Additional assets subject to distribution were Linda’s state retirement valued approximately at $27,784.36, an annuity in Linda’s name valued at $28,474.34, 128 shares of Bancorp-South stock at an approximate value of $2,009.60, and a $50,000 State Farm life insurance policy on Harry with a cash value of $3,000. There were also two other life insurance policies which had no cash value. Two vehicles were registered in both names, a 1992 Toyota van driven by Linda and a 1986 Toyota van with a value of $2,500. Harry had several vehicles in his name including a 1986 Honda valued at $2,000, a 1987 Toyota sport utility vehicle valued at $1,000, a 1957 Chevy Pickup valued at $2,500, and a 1995 Mitsubishi Gallant valued at $3,800.
¶ 6. The chancellor awarded Linda the marital home, the cabin, the retirement account, annuity, stock, and cash value of the life insurance for a total of $122,749.30. Harry was awarded the veterinary realty and the veterinary clinic for a total of *366 $216,106. The difference, $93,357, was awarded to Linda as a property settlement which is payable by Harry in increments of $1,000 per month until the sum is paid in full.
ANALYSIS
¶ 7. It must be reasonably certain to this Court that the chancellor abused his discretion, was manifestly wrong, was clearly erroneous or applied an erroneous legal standard to render a reversal. Barton v. Barton, 790 So.2d 169, 175(¶ 17) (Miss.2001); Palmer v. Palmer, 841 So.2d 185, 188(¶ 2) (Miss.Ct.App.2003).
I. DID THE COURT ADEQUATELY FOLLOW THE FACTORS SET FORTH BY THE MISSISSIPPI SUPREME COURT AND DID THE COURT AWARD AN EXCESSIVE AMOUNT OF ALIMONY?
¶ 8. Harry asserts that the chancellor erred in awarding Linda’s $1,000 per month alimony claiming that it is excessive and unfair. Harry cites his depreciating health as the main factor in reasoning that the alimony award is in error with earning capacity also being a reason for error.
¶ 9. The guidelines to be used in determining if alimony is appropriate in a particular case were established in Armstrong v. Armstrong, 618 So.2d 1278 (Miss.1993). They are: (1) the income and expenses of the parties; (2) the health and earning capacities of the parties; (3) the needs of each party; (4) the obligations and assets of each party; (5) the length of the marriage; (6) the presence or absence of minor children in the home; (7) the age of the parties; (8) the standard of living of the parties, both during the marriage and at the time of the support determination; (9) the tax consequences of the spousal support order; (10) fault or misconduct; (11) wasteful dissipation of assets by either party; or (12) any other factor deemed just and equitable. Armstrong, 618 So.2d at 1280. Unlike property division, an on-the-record analysis of the Armstrong factors is not necessary. Thompson v. Thompson, 816 So.2d 417, 420(¶ 9) (Miss.Ct.App.2002).
¶ 10. The supreme court has held that alimony, if allowed, “should be reasonable in amount, commensurate with the wife’s accustomed standard of living, minus her own resources, and considering the ability of the husband to pay. As long as the chancellor follows this general standard, the amount of the award is largely within his discretion.” Gray v. Gray, 562 So.2d 79, 83 (Miss.1990).
¶ 11. The record shows that the chancellor determined that there was a large difference between Harry’s and Linda’s gross monthly incomes. The chancellor also considered the health, age, need and earning capacity of both individuals when deciding on whether to award alimony and how much to award. Considering all the factors set out in Armstrong, as the chancellor did in the record, the alimony award is equitable and no abuse of discretion is present.
II. WAS THE DIVISION OF THE MARITAL ASSETS AN EQUITABLE ONE?
¶ 12. Harry asserts that the court’s intentions were to make an equitable division of the marital property, but failed to do so. Harry claims that a proper division would be an equal 50/50 split of the marital assets, rather than a difference of $93,357 which he must pay at a rate of $1,000 per month.
¶ 13. The case of Ferguson v. Ferguson, 639 So.2d 921 (Miss.1994), established the guidelines that chancellors are to consider when deciding issues of marital property division. In that ease, this Court directed chancery courts [to] *367 consider the following guidelines, where applicable, when attempting to effect an equitable division of marital property:
1. Substantial contribution to the accumulation of the property. Factors to be considered in determining contribution are as follows:
a. Direct or indirect economic contribution to the acquisition of the property;
b. Contribution to the stability and harmony of the marital and family relationships as measured by quality, quantity of time spent on family duties and duration of the marriage; and
e. Contribution to the education, training or other accomplishment bearing on the earning power of he spouse accumulating the assets.
2. The degree to which each spouse has expended, withdrawn or otherwise disposed of marital assets and any prior distribution of such assets by agreement, decree or otherwise.
3. The market value and the emotional value of the assets subject to distribution.
4. The value of assets not ordinarily, absent equitable factors to the contrary subject to such distribution, such as property brought to the marriage by the parties and property acquired by inheritance or inter vivos gift by or to an individual spouse;
5. Tax and other economic consequences, and contractual or legal consequences to third parties, of the proposed distribution;
6. The extent to which property division may, with equity to both parties, be utilized to eliminate periodic payments and other potential sources of future friction between the parties;
7. The needs of the parties for financial security with due regard to the combination of assets, income and earning capacity; and
8.Any other factor which in equity should be considered.
Ferguson, 639 So.2d at 928. The phrase “where applicable” and guideline number eight indicate that this is a non-exclusive listing of factors that the chancellor may consider. Id. The chancellor must also “support their decisions with findings of fact and conclusions of law for purposes of appellate review.” Id. The Mississippi Supreme Court has stated that “the failure to make findings of fact and conclusions of law [is] manifest error requiring reversal on remand.” Sandlin v. Sandlin, 699 So.2d 1198, 1204 (Miss.1997). This Court must have these findings of fact because “this Court cannot determine whether the chancellor abused his discretion until he provides a record of his determination of both parties’ nonmarital assets, of his equitable distribution in light of each party’s nonmarital property, guided by the Ferguson factors, and, if necessary to do equity, of any award of alimony.” Johnson v. Johnson, 650 So.2d 1281, 1287 (Miss.1994). The factors enumerated in Ferguson are not factors in guiding the classification of assets as marital or nonmarital property, they are factors that are to be considered when deciding which party should receive certain assets in the division of the marital property, and to justify any inequitable division that may occur. Ferguson, 639 So.2d at 928.
¶ 14. In Johnson v. Johnson, the supreme court outlined the steps involved in the process of applying the equitable distribution factors listed in Ferguson. Johnson, 650 So.2d at 1287. To begin, the chancellor is to classify the parties’ assets as marital or non-marital pursuant to Hemsley v. Hemsley, 639 So.2d 909, 914 (Miss.1994). Next, the chancellor is to value and equitably divide the marital *368 property using the Ferguson factors as guidelines, in light of each party’s non-marital property. Johnson, 650 So.2d at 1287. Mississippi follows an equitable distribution theory of property division, whereby the chancery courts are to use their equity power to do fairness to the parties, not to simply award a certain percentage of the marital assets. Ferguson, 639 So.2d at 926. We have repeatedly held that in making an equitable division of the marital property, the chancellor is not required to divide the property equally. Love v. Love, 687 So.2d 1229, 1232 (Miss.1997). See also Trovato v. Trovato, 649 So.2d 815, 818 (Miss.1995) (holding that equal distribution of the property was an abuse of discretion when wife had contributed significantly more to the marital assets than the husband); Brame v. Brame, 796 So.2d 970, 975(¶ 20) (Miss.2001).
¶ 15. The chancellor has made findings of fact on the record which comply with the legal standard set forth in the cases supra. There is no error.
III. DID THE COURT ERR IN FINDING THAT LINDA HAS AN INABILITY TO PAY THE ENTIRE AMOUNT OF ATTORNEY’S FEES?
¶ 16. Harry asserts that the chancellor’s award of attorney’s fees was unfounded. He claims that Linda is able to pay her attorney’s fees, and as such she is not entitled to an award of attorney’s fees. Harry claims that to require him to pay Linda’s attorney’s fees would place an undue burden on him.
¶ 17. An award of attorney’s fees in divorce cases is largely a matter entrusted to the sound discretion of the trial court; absent abuse of discretion, the chancellor’s decision in such matters will generally be upheld. Armstrong, 618 So.2d at 1278. An appellate court is “reluctant to disturb a chancellor’s discretionary determination whether ... to award attorney fees and of the amount of [any] award.” Geiger v. Geiger, 530 So.2d 185, 187 (Miss.1988). This Court has stated that “where the only liquid asset is the alimony award and the party seeking fees has otherwise demonstrated an inability to pay the fees, a reasonable award is appropriate, providing the McKee factors, regarding inability to pay, the skill of the attorney, the nature and novelty of the case, usual fees for similar cases of a similar character are satisfied.” East v. East, 775 So.2d 741, 745(¶ 16) (Miss.Ct.App.2000) (citing McKee v. McKee, 418 So.2d 764, 767 (Miss.1982)).
¶ 18. The Mississippi Supreme Court in McKee, pronounced that, “[i]n addition to the relative financial ability of the parties, [the chancellor is to consider] the skill and standing of the attorney employed, the nature of the case and novelty and difficulty of the questions at issue, as well as the degree of responsibility involved in the management of the cause, the time and labor required, the usual and customary charge in the community, and the preclusion of other employment by the attorney due to the acceptance of the case.” McKee, 418 So.2d at 767.
¶ 19. The chancellor may also consider the source of the funds the spouse would be forced to use to pay the attorney’s fees. As the Mississippi Supreme Court has stated, “We are of the opinion that she should not be required to invade the corpus of her investment or to take from her own teacher’s income to pay her attorney’s fees under the facts of this case.” Adams v. Adams, 591 So.2d 431, 435 (Miss.1991). Although there is no verbalized finding, the record provides more than adequate foundation that the individual factors in McKee were ample to support the chancellor’s finding. Furthermore, the record provides more than ade *369 quate evidence of Linda’s need for the award of attorney’s fees as the findings of fact show a financial strain on Linda.
¶ 20. THE JUDGMENT OF THE LEE COUNTY CHANCERY COURT IS AFFIRMED. STATUTORY DAMAGES AND INTEREST ARE AWARDED. ALL COSTS OF THIS APPEAL ARE ASSESSED AGAINST THE APPELLANT.
McMILLIN, C.J., KING AND SOUTHWICK, P JJ., BRIDGES, LEE, IRVING, MYERS, CHANDLER AND GRIFFIS, JJ., CONCUR.