924 So.2d 584 (2006)
Francis Joseph LAURO, Appellant
v.
Helen Rita LAURO, Appellee.
Francis Joseph Lauro, Appellant
v.
Helen Rita Lauro, Appellee.
Nos. 2004-CA-02252-COA, 2001-CA-00801-SCT.
Court of Appeals of Mississippi.
March 7, 2006.
*586 Lee Ann Self Turner, Mark A. Chinn, Jackson, attorneys for appellant.
Jerry Dean Sharp, Terry L. Caves, Laurel, attorneys for appellee.
Before MYERS, P.J., CHANDLER and GRIFFIS, JJ.
MYERS, P.J., for the Court.
¶ 1. This case is before us following a remand by the supreme court to revisit the awards of alimony and child support after complying with the Ferguson factors in equitably dividing the marital assets. Lauro v. Lauro, 847 So.2d 843 (Miss.2003). On remand the chancellor evaluated the Ferguson factors, reduced the amount of alimony and increased the child support award. Additionally, a visitation schedule was entered and Helen was awarded attorney's fees.

FACTS
¶ 2. Francis "Frank" and Helen Lauro were married on May 1, 1991. During the early years of the marriage, Helen worked as a licensed practical nurse. During their marriage, three children were born: Christiana, born January 31, 1992; Phillip, born November 15, 1994; and Isabella, born October 3, 1998.
¶ 3. On April 23, 1999, Helen filed for separate maintenance after discovering that Frank was romantically involved with another woman. Frank filed a counter-compliant for divorce on May 12, 1999. On June 2, 2000, Helen's motion to file an amended complaint for divorce was granted by the chancellor.
¶ 4. A trial on this matter was held in the Chancery Court of the Second Judicial District of Jones County on June 14 and August 16 and 17, 2000. Helen was granted a divorce on the grounds of uncondoned adultery. Helen was awarded the equity from the sale of the marital home, primary physical and legal custody of the three children, child support in the amount of $600 per child for a total of $1,800 per month, $4,200 per month in periodic alimony, and $19,391.95 in attorney's fees. From this judgment, Frank appealed to the supreme court.
¶ 5. On appeal, the supreme court in an opinion written by Justice Carlson affirmed in part, and reversed and remanded in part this case to the chancery court. The chancellor was ordered to make a proper classification of the marital property for equitable distribution as outlined in *587 Ferguson. After the proper classification and equitable distribution was made, the chancellor was ordered to revisit his awards of alimony and child support. Upon the determination of equitable distribution, alimony and child support, the chancellor was given the option of revisiting the award of attorney's fees to Helen. Finally, the chancellor was instructed to address Helen's request for medical insurance that was not addressed in the final judgement. Lauro v. Lauro, 847 So.2d 843 (Miss.2003).
¶ 6. Upon remand, the parties agreed not to reopen the evidence and have the trial court reconsider the evidence presented during the original trial. On August 27, 2004, the chancellor entered his seventeen page "Findings of Fact and Conclusions of Law." The chancellor addressed each of the Ferguson factors in equitably distributing the marital estate, he then reconsidered the issues of alimony, child support, and attorney's fees. Helen was awarded $3,000 per month in periodic alimony. The parties agreed that Helen would receive primary physical custody and Frank and Helen would have joint legal custody, with Frank having agreed visitation. The chancellor then awarded child support in accordance with the statutory guidelines which amounted to $2,001 per month ($667 per child). The chancellor also awarded Helen attorney's fees in the sum of $19,391.95. From this judgment Frank appeals raising five issues and Helen enters a motion for attorney's fees on appeal. The issues of this case are:
I. THE TRIAL COURT ERRED IN AWARDING PERIODIC ALIMONY INSTEAD OF REHABILITATIVE ALIMONY AS PROMPTED BY THE SUPREME COURT OPINION.
II. THE CHANCELLOR WAS MANIFESTLY WRONG AND CLEARLY ERRONEOUS IN AWARDING PERIODIC ALIMONY WHEN CONSIDERED WITH THE AWARD OF CHILD SUPPORT AND OTHER SUPPORT AWARDS.
III. THE CHANCELLOR ABUSED HIS DISCRETION BY NOT EQUITABLY DISTRIBUTING THE MARITAL ASSETS.
IV. THE CHANCELLOR COMMITTED MANIFEST ERROR IN AWARDING VAGUE AND UNSPECIFIED VISITATION.
V. THE AWARD OF ATTORNEY'S FEES WAS ERRONEOUS AND AN ABUSE OF DISCRETION.
VI. HELEN'S MOTION FOR ATTORNEY'S FEES ON APPEAL.

STANDARD OF REVIEW
¶ 7. Our standard of review for all appeals involving domestic relations matters is limited. We will not disturb the findings of a chancellor unless the chancellor was "manifestly wrong, clearly erroneous, or an erroneous legal standard was applied." Perkins v. Perkins, 787 So.2d 1256, 1260-61(¶ 9) (Miss.2001).

DISCUSSION

I. THE TRIAL COURT ERRED IN AWARDING PERIODIC ALIMONY INSTEAD OF REHABILITATIVE ALIMONY AS PROMPTED BY THE SUPREME COURT OPINION.
¶ 8. As the first issue presented on appeal, Frank contends that the supreme court instructed the chancellor that in awarding alimony he should award rehabilitative alimony and not periodic alimony. Frank argues that the chancellor awarded the permanent periodic alimony to punish him. Frank contends that he should only be required to pay Helen rehabilitative alimony to allow her to get back into the working world. We do not agree.
*588 ¶ 9. Alimony is only considered after the marital property has been equitably divided and the chancellor determines that one spouse is at a deficit. Lauro, 847 So.2d at 848. "Alimony and equitable distribution are distinct concepts, but together they command the entire field of financial settlement of divorce. Therefore, where one expands, the other must recede." Id. at 849 (citations omitted).
¶ 10. In Justice Carlson's opinion, the reference to the award of rehabilitative alimony was part of a larger discussion on when a chancellor must revisit the award of alimony. The previous opinion instructs the chancellor, and this Court, when alimony is to be revisited on remand and when it is not. In respect to revisiting periodic alimony the supreme court points our attention to Mace v. Mace, 818 So.2d 1130 (Miss.2002), and for rehabilitative alimony, Hensarling v. Hensarling, 824 So.2d 583 (Miss.2002).
¶ 11. In Mace the supreme court instructed the chancellor to revisit the award of periodic alimony after a proper value of the medical practice had been determined. The supreme court instructed:
The chancery court's valuation of the practice is reversed, and this case is remanded for an adequate valuation of the practice. Also, the award of alimony is vacated, and the chancellor instructed to revisit the issue as alimony and equitable distribution should be considered together. Ferguson, 639 So.2d at 929 (stating that though alimony and equitable distribution are different concepts, they should be considered together, as when one expands, the other must recede).
Mace, 818 So.2d at 1134(¶ 16). The award of alimony in Mace was one of permanent periodic alimony. This case instructs that periodic alimony can only be awarded after the proper equitable distribution of marital assets is complete and when equitable distribution is revisited periodic alimony must also be revisited.
¶ 12. In Hensarling, the supreme court affirmed the chancellor's award of rehabilitative alimony even though the court had reversed the chancellor's evaluation of the martial estate and remanded to determine the value. Hensarling, 824 So.2d at 595(¶ 39).
¶ 13. In their previous opinion in this case the supreme court held that "rehabilitative alimony is not considered during equitable distribution." Lauro, 847 So.2d at 849(¶ 15). Additionally, the court held that "Helen was granted permanent periodic alimony; therefore, case law mandates that her award of alimony be considered with the equitable distribution of the marital property." Id.
¶ 14. The discussion of periodic and rehabilitative alimony was instructive for an understanding of how each is handled when a case is remanded for property distribution. Periodic alimony is to be reconsidered when the marital estate is redistributed under principles of equitable distribution. However, rehabilitative alimony is not considered during equitable distribution.
¶ 15. Finding that the supreme court classified the award of alimony as permanent periodic alimony and did not instruct the chancellor to award rehabilitative alimony, we find this issue without merit.

II. THE CHANCELLOR WAS MANIFESTLY WRONG AND CLEARLY ERRONEOUS IN AWARDING PERIODIC ALIMONY WHEN CONSIDERED WITH THE AWARD OF CHILD SUPPORT AND OTHER SUPPORT AWARDS.
¶ 16. As his second issue on appeal, Frank argues that the chancellor *589 erred in awarding Helen $3,000 per month in periodic alimony when considered with the $2,001 per month in child support and the amount of marital debt Frank was ordered to pay. We do not agree.
¶ 17. In the "Findings of Fact and Conclusions of Law" entered by the trial court, the chancellor addressed each of the factors set forth in Armstrong v. Armstrong, 618 So.2d 1278 (Miss.1993). The chancellor determined that Frank was in excellent health, thirty-eight years old and earned $200,000 per year. Helen was thirty-six years old and had no income other than the support from Frank. At the time of the separation, Helen was suffering from depression and anxiety from Frank's infidelity, behavior and the breakup of their marriage. During the separation, Helen attempted to renew her licensed practical nurse (LPN) license, but Frank stopped payment on the check. Helen also attempted to obtain her license as a registered nurse (RN), but was unable to do so due to Frank's abusive behavior. Helen's earning capacity would be higher if she obtained her RN license.
¶ 18. Upon the parties moving to Laurel, Frank maintained Helen with a very high standard of living. Frank provided Helen with a Rolex watch, jewelry, designer clothes and told her not to shop at Kmart, Wal-Mart or Payless Shoes because she was a doctor's wife. Helen had free use of the checkbook to spend money on her and the children.
¶ 19. After considering the Armstrong factors, the chancellor awarded Helen $3,000 per month alimony, the tax deduction for the three children and the responsibility to pay the marital debts was placed with Frank. These awards are supported by the facts of this case. Frank maintained Helen in a high standard of living. Helen was not allowed to shop at stores that were beneath the lifestyle of a doctor's wife. Frank also did not want Helen to work. He continued to desire that she not work after the separation; this is evidenced by his stopping payment on the check to renew her license and his interference with her pursuant of her RN license.
¶ 20. Finding that the chancellor was not manifestly wrong nor applied an erroneous legal standard this error is without merit.

III. THE CHANCELLOR ABUSED HIS DISCRETION BY NOT EQUITABLY DISTRIBUTING THE MARITAL ASSETS.
¶ 21. As his third issue on appeal, Frank contends that the chancellor's distribution of marital property was not equitable and that the Ferguson factors were not properly considered. We do not agree.
¶ 22. Mississippi is not a community property state; thus, the chancellor is not required to divide marital property equally. Redd v. Redd, 774 So.2d 492(¶ 7) (Miss.Ct.App.2000). The case of Ferguson v. Ferguson, 639 So.2d 921 (Miss.1994), established the guidelines that chancellors are to consider when deciding issues of marital property division. Ferguson directs chancery courts to consider the following guidelines, where applicable, when attempting to effect an equitable division of marital property:
1. Substantial contribution to the accumulation of the property. Factors to be considered in determining contribution are as follows:
a. Direct or indirect economic contribution to the acquisition of the property;
b. Contribution to the stability and harmony of the marital and family relationships as measured by quality, quantity *590 of time spent on family duties and duration of the marriage; and
c. Contribution to the education, training or other accomplishment bearing on the earning power of he spouse accumulating the assets.
2. The degree to which each spouse has expended, withdrawn or otherwise disposed of marital assets and any prior distribution of such assets by agreement, decree or otherwise.
3. The market value and the emotional value of the assets subject to distribution.
4. The value of assets not ordinarily, absent equitable factors to the contrary subject to such distribution, such as property brought to the marriage by the parties and property acquired by inheritance or inter vivos gift by or to an individual spouse;
5. Tax and other economic consequences, and contractual or legal consequences to third parties, of the proposed distribution;
6. The extent to which property division may, with equity to both parties, be utilized to eliminate periodic payments and other potential sources of future friction between the parties;
7. The needs of the parties for financial security with due regard to the combination of assets, income and earning capacity; and
8. Any other factor which in equity should be considered.
Klauser v. Klauser, 865 So.2d 363, 366-67(¶ 13) (Miss.Ct.App.2003).
¶ 23. Equitable distribution does not mean equal distribution. Chamblee v. Chamblee, 637 So.2d 850, 863-64 (Miss.1994). When a chancellor makes a distribution of the marital estate, that decision must be supported by a findings of fact and conclusions of law on the record for the purpose of appellate review. Klauser, 865 So.2d at 367(¶ 13). It must be reasonably certain to this Court that the chancellor abused his discretion, was manifestly wrong, was clearly erroneous or applied an erroneous legal standard to render a reversal. Barton v. Barton, 790 So.2d 169, 175(¶ 17) (Miss.2001); Palmer v. Palmer, 841 So.2d 185, 188(¶ 2) (Miss.Ct. App.2003).
¶ 24. Having reviewed the chancellor's findings of fact and conclusions of law, we do not find an abuse of discretion, manifest error, or an erroneous legal standard. The chancellor followed the guidelines set forth in Ferguson by addressing each of the factors as follow:
1.a. The chancellor found that Frank was the sole wage earner with a annual salary of $200,000. Helen was a stay-at-home mother and supported Frank in his career.
b. Frank and Helen were both contributors to the stability and harmony of the marriage until Frank began an extra-marital affair.
c. Helen supported Frank during his medical internship and fellowship which concluded his medical training.
2. Frank disposed of marital assets by liquidating his IRA, selling a vehicle and spending marital funds on his girlfriend by paying rent and other monthly expenses. Additionally, Frank took his girlfriend on expensive trips and purchased his mother diamond earrings.
3. The chancellor addressed the market and emotional value of the parties assets
4. Neither party had non-marital assets that were not commingled and Frank was found to have substantial separate debt.
5. No testimony was given at trial regarding tax or economic consequences.

*591 6. The chancellor determined that property division should be used to eliminate future friction between the parties. Helen was unemployed at the time of trial and Frank had a substantial earning capacity.
8. The chancellor found substantial marital debt.
¶ 25. We find that the chancellor properly applied the Ferguson factors to these facts. Therefore, this issue is without merit.

IV. THE CHANCELLOR COMMITTED MANIFEST ERROR IN AWARDING VAGUE AND UNSPECIFIED VISITATION.
¶ 26. As the forth issue on appeal, Frank requests this Court to remand the case for the chancellor to enter a specific visitation schedule with his children. We agree.
¶ 27. "The specification of times for visitation rights is committed to the broad discretion of the chancellor," but that does not excuse the failure of the chancellor to specify what those times are. Childers v. Childers, 717 So.2d 1279, 1282(¶ 16) (Miss.1998) (quoting Clark v. Myrick, 523 So.2d 79, 83 (Miss.1988)). The final judgment of divorce provides "reasonable visitation as specifically dictated in the record and agreed by the parties." However, the record does not indicate any specific visitation schedule or agreement between the parties concerning visitation between Frank and his children. We, therefore, remand on this issue and order that the chancellor enter a specific visitation schedule.

V. THE AWARD OF ATTORNEY'S FEES WAS ERRONEOUS AND AN ABUSE OF DISCRETION.
¶ 28. As Frank's fifth and final issue on appeal, he contends that the chancellor abused his discretion in awarding Helen $19,391.95 in attorney's fees. We do not agree.
¶ 29. An award of attorney's fees in domestic cases is largely a matter entrusted to the sound discretion of the trial court. Poole v. Poole, 701 So.2d 813, 819(¶ 26) (Miss.1997); Arthur v. Arthur, 691 So.2d 997, 1004 (Miss.1997). Unless the chancellor is manifestly wrong, his decision regarding attorney fees will not be disturbed on appeal. Bredemeier v. Jackson, 689 So.2d 770, 778 (Miss.1997). Absent an abuse of discretion, the chancellor's decision in such matters will generally be upheld. Armstrong v. Armstrong, 618 So.2d 1278, 1282 (Miss.1993); Martin v. Martin, 566 So.2d 704, 707 (Miss.1990); Kergosien v. Kergosien, 471 So.2d 1206, 1212 (Miss.1985).
¶ 30. In the chancellor's "Finding's of Fact and Conclusions of Law" he directs this Court's attention to the fact that a large sum of Helen's attorney's fees were the result of Frank's contemptuous conduct in not paying court-ordered support. Additionally, based on the trial record, Helen was not employed and she provided direct testimony that she would be unable to pay the fees. Her Rule 8.05 Financial Statement provided that she had no income and her monthly expenses were $7,007.68. The chancellor found that Franks's actions had caused Helen to incur increased fees. The chancellor states: "Over the history of the case before the Court, it seemed that Frank tried to use his superior financial position in an effort to `beat Helen down' and deprive her of legal representation by filings which required her to pay an attorney to defend."
¶ 31. We find that the chancellor did not abuse his discretion in awarding attorney's fees. This issue is without merit; we affirm.

*592 VI. HELEN'S MOTION FOR ATTORNEY'S FEES ON APPEAL
¶ 32. Helen requests that this Court order Frank to pay her attorney's fees and expenses on this appeal. We agree.
¶ 33. This Court has generally awarded attorney's fees on appeal in the amount of one-half of what was awarded in the lower court. Monroe v. Monroe, 745 So.2d 249, 253(¶ 17) (Miss.1999). Attorney's fees are based upon necessity rather than entitlement. Id.
¶ 34. The lower court found that Helen was unable to pay her attorney's fees because of her unemployment, based on Frank's actions, and her monthly expenses of $7007.68. We grant Helen's motion for attorney's fees on appeal in the amount of $9,695.98.

CONCLUSION
¶ 35. We find no error by the chancellor in the granting of periodic alimony, of the amount of support granted to Helen, the equitable distribution of the marital assets, or the awarding of attorney's fees. We do remand to the lower court and instruct the chancellor to enter a specific visitation schedule between Frank and the minor children. Helen's motion for attorney's fees on appeal is granted.
¶ 36. THE JUDGMENT OF THE CHANCERY COURT OF THE SECOND JUDICIAL DISTRICT OF JONES COUNTY IS AFFIRMED IN PART AND REVERSED AND REMANDED IN PART. THE MOTION OF HELEN LAURO REQUESTING ATTORNEY'S FEES ON APPEAL IS GRANTED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., LEE, P.J., SOUTHWICK, IRVING, CHANDLER, GRIFFIS, BARNES, ISHEE, AND ROBERTS, JJ. CONCUR.