FAIR, J.,
for the Court:
¶ 1. Paul and Sharon Frazier appear here in two appeals, which we have consolidated. Their dispute centers around the question of whether Paul should continue to pay child support as he originally contracted when they divorced, or whether he should pay a lesser amount because he has since lost his job and is earning less.
¶2. We affirm the chancellor’s temporary modification of support for one year and her award of a judgment for deficient child support payments.
FACTS
¶ 3. Paul and Sharon were divorced on the grounds of irreconcilable differences on November 9, 2009. They had two children. Their written and personally signed property, child support, and custody agreement was approved as adequate and sufficient and required Paul to pay $750 per month per child in regular child support, $500 per month for private school expenses for ten months out of the year, and an additional $500 per month in alimony. It further provided that “should Paul lose his job it would be considered a material change in circumstances” with regard to modification of child support.
¶ 4. Paul lost his job seven months later, through what the chancellor found to be no fault of his own. He immediately petitioned for a modification of his support obligations for their two children, stating he has “lost his job but has found a new job that pays considerably less.”
¶ 5. Sharon answered that Paul should continue paying in accord with his agree *1070 ment and that “the change in circumstances is due to a voluntary act of [Paul] or was reasonably anticipated.” She also filed a separate petition for contempt and a judgment for child support arrearage because Paul, on advice of counsel, had unilaterally reduced the monthly child support payments after losing his job.
¶ 6. After a half-day trial on the child support modification, in an order dated December 7, 2011, the chancellor reduced the payment to $375 per child per month for a year, from November 15, 2011, through November 14, 2012. Paul calls the reversion a “snapback clause.” The chancellor stated on the record that no change was made in the school expenses payment of $500 per month. A formal order was entered on December 9, 2011, and Paul filed his appeal on January 6, 2011, in Cause No.2012-CA-00061-COA. No mention is made anywhere in the record of any consideration of Rule 54(b) of the Mississippi Rules of Civil Procedure. The hearing transcript did reflect that, with consent of the parties, only one of the issues between them, that of modification, would be heard in the limited time available, and that contempt and arrearage issues would be heard as soon as possible when time permitted.
¶ 7. The chancellor set out her concerns on the record after the hearing, noting that Paul works every other week and admittedly reduced his payments for his children in order to meet his obligations for other things, including a Cadillac Esca-lade and a Harley Davidson motorcycle. The chancellor ordered a temporary reduction of child support to allow Paul “to think about how to modify his lifestyle with which to bring himself into a more accurate priority, that being his minor children.”
¶ 8. Frazier v. Frazier remained active on the Madison County Chancery docket with Sharon’s claims for Paul’s arrearage in child support, contempt, and attorney’s fees pending until they were heard on May 3, 2012, in a brief, one-hour hearing. The court entered a second and final judgment, finding Paul $10,000 in arrears. In a bench opinion at the close of evidence, the chancellor cited Varner v. Varner, 588 So.2d 428 (Miss.1991), and Thurman v. Thurman, 559 So.2d 1014 (Miss.1990), in support of her finding that child support judgments had vested in the children and could not be reduced or forgiven. She noted the holding in Varner that parties have no right to bargain away the rights vested in their children. Paul was allowed five months from the date of the hearing to pay the arrearage. A finding of contempt and an award of fees to Sharon were denied. Paul filed a second appeal from that judgment.
¶ 9. Since there is only one real dispute between Paul and Sharon, and the two judgments claimed by Paul to be in error have become final only with entry of the second, the two appeals have been consolidated before this Court.
STANDARD OF REVIEW
¶ 10. “Domestic relations matters are among the most difficult cases dealt with by our chancellors.” Wright v. Wright, 737 So.2d 408, 410 (¶ 5) (Miss.Ct.App.1998) (citations omitted). Consequently, a chancellor’s factual findings, such as the amounts paid and not paid and .the ability of Paul to pay support in his contractual amount, will not be disturbed unless the chancellor was manifestly wrong or clearly erroneous, or applied an erroneous legal standard. See Carambat v. Carambat, 72 So.3d 505, 510-11 (¶ 24) (Miss.2011). As long as substantial evidence supports the chancellor’s findings, an appellate court is without authority to disturb them, even if it would have found *1071 otherwise as an original matter. Joel v. Joel, 43 So.3d 424, 429 (¶ 14) (Miss.2010). Additionally, if the chancellor has made no specific findings and none are required under “factor finding” case law mandate, we generally proceed on the assumption that she resolved fact issues in favor of the prevailing parties. See Ferrara v. Walters, 919 So.2d 876, 881 (¶ 8) (Miss.2005).
¶ 11. On the other hand, questions of law, such as that posed by Paul in his appeal seeking retroactive modification of child support, are reviewed de novo. See Irving v. Irving, 67 So.3d 776, 778 (¶ 11) (Miss.2011).
DISCUSSION
1. Temporary Modification
¶ 12. Paul presents this as the sole issue in his first appeal. He has no problem with the judgment that cuts his child support obligation in half in response to his general motion for modification. He objects instead to the “snap back” provision that makes the reduction temporary.
¶ 13. It should first be noted that Paul and Sharon personally signed their written agreement for specific monthly amounts of child support, private school expenses until the children complete the eighth grade, and alimony. Such provisions must have been approved by the chancellor as adequate and sufficient, Perkins v. Perkins, 787 So.2d 1256, 1264 n. 4 (Miss.2001), although the actual agreement and the judgment of divorce adopting it were not designated into the record on appeal. Nevertheless, the divorce adjudication is not disputed by either party, so its adoption of the Fraziers’ agreement carried with it implied findings by the chancery court regarding the financial status of Paul and Sharon, i.e., Paul’s ability to pay according to the agreement and the corresponding need of Sharon and the two children for those amounts. In such situations parents are free to contract for higher obligations than might otherwise be required of them. See Bell v. Bell, 572 So.2d 841, 844 (Miss.1990). These contracts are in the public interest and should be enforced as least as strictly as other contracts, such as those for the purchase of automobiles and motorcycles. See id. “When the parties have reached an agreement and the chancery court has approved it, [courts will] enforce it and take [a] dim ... view of efforts to modify it,” just as when parties seek relief from other contractual obligations. Id.
¶ 14. The parties did concur in their pleadings and in the transcripts of hearings, which were made part of the record, that the property settlement provided that Paul’s loss of his job would be a “material change in circumstances” justifying, apparently in their minds, a possible modification in his contempt-enforceable obligations for monthly child support. Generally, for a modification of either ordered or contractual child support to be appropriate, there must have been an “unanticipated” change in circumstances of the paying parent that results in inability to honor his obligations toward his children, particularly those obligations he has voluntarily contracted to pay. See Evans v. Evans, 994 So.2d 765, 770 (¶¶ 16-17) (Miss.2008). However, contracts that anti-cipatorily mandate the effect of material changes in circumstances have been held unconscionable and void by the courts. See Houck v. Ousterhout, 861 So.2d 1000, 1001-02 (¶ 8) (Miss.2003).
¶ 15. Nevertheless, before entering both judgments, the chancellor independently determined that at least a temporary material change had occurred. The chancellor reduced support for a year based on that determination. She stated in her bench' ruling that Paul’s problem *1072 was the voluntary election of a lifestyle that made him unable to provide for his children. She gave him one year of reduced obligations to rearrange his life to honor his obligations in the judgment. The chancellor noted that she considered the fact that Paul has every other week completely off work and has no desire or intention of seeking supplemental employment during those weeks other than to work on a motorcycle when he finds a shop in which to do it. The record further reflects that he has completed twenty-six years of military service, although his age and eligibility for military retirement benefits are not reflected in the record, nor is there any indication of his intent, or lack thereof, in seeking his retirement benefits.
¶ 16. As noted, a number of documents were presented to the chancellor that were not designated for the record on appeal. This raises the question of whether it is possible to overcome the presumption that sufficient evidence exists to support the decision to grant Paul a temporary reduction in child support.
¶ 17. The Supreme Court of Mississippi, in Bailey v. Bailey, 724 So.2d 335, 339 (¶ 12) (Miss.1998), held that temporary reduction in child support, as occurred in this case, is not only within the power of a chancellor — it is required under appropriate circumstances. In Bailey it was held:
Where the reason for modification is temporary in nature, the trial court should order a temporary reduction in child support. See Nichols v. Tedder, 547 So.2d 766, 781-82 (Miss.1989). The chancellor’s order permanently reducing Sandra’s child support obligation is reversed, and this case is remanded for further findings on a reasonable temporary reduction in child support.
Id. (emphasis added).
¶ 18. In today’s case the chancellor determined that, based on financial disclosures of income and assets referred to but not included in the record on appeal, a “reasonable temporary reduction in child support” was appropriate, even if she did not use those exact words. She stated, in ruling from the bench, that Paul could pay the amount he had voluntarily agreed was needed to support his two children by rearranging his priorities, financial affairs, and employment. The chancellor temporarily reduced his child support for a year in order to assist him in doing so. That was not error.
2. Retroactive Modification of Child Support
¶ 19. Though he did not affirmatively seek retroactive modification of the child support that he did not pay in full, Paul asks this Court to deviate from both long-established case law and legislative mandate and grant him retroactive relief. He begins his brief on appeal by admitting:
This is a case about the retroactive modification of child support. A husband sought a change in support because he had lost his job and was making considerably less than at the time of divorce. The trial court modified the child support. However, it took well over a year to obtain the relief, and in the meantime the husband incurred heavy child support obligations he could not meet.
Despite ordering a modification, the trial court did not order a reduction in his past due child support, even though the husband ... had timely filed and pursued the modification. In the interests of equity and public policy, the Court must fashion a remedy for good faith litigants who are forced into extreme situations like this one.
¶ 20. Recently, in A.M.L. v. J.W.L., 98 So.3d 1001, 1016-17 (¶¶ 40-42) (Miss.2012), *1073 the Supreme Court of Mississippi addressed that specific issue and manifested its intent to continue adherence to its prior line of cases as well as defer to the statutory provisions of Mississippi Code Annotated section 43-19-34(4) (Rev.2009), which allows retroactive increases in child support but expressly prohibits retroactive decreases.
¶ 21. Paul asks us to essentially repeal that statute and overrule a long line of supreme court authority, or at the very least to carve out an exception for decisions unduly delayed through no fault of the obligor. He admits, however, that:
Over twenty years ago, the Supreme Court determined that it would not allow a retroactive modification in child support on public policy grounds. Cumberland v. Cumberland, 564 So.2d 839, 847 (Miss.1990). The essential point was that a judicial decree ordered the child support, and a parent should not simply ignore it without leave of court. Id. “The rationale behind this view is not difficult to divine,” the Court held, since it wished to prohibit “self help” when a parent might seek to “modify his or her obligation with impunity.” Id.
After Cumberland, the Legislature saw fit to constrain retroactive modification further. It decreed that “[a]ny order for the support of minor children, whether entered through the judicial system or through an expedited process, shall not be subject to a downward retroactive modification.” Miss.Code Ann. § 43-19-34(4) (the same law allowed an upward retroactive modification).
Paul relies upon and quotes from the four-member special concurrence penned by Justice Pierce in A.M.L., which posits allowing retroactive downward modification at least sparingly and in eases of crowded dockets and dilatory tactics causing unreasonable delay. A.M.L., 98 So.3d at 1024-25 (¶ 70). In this case a crowded docket is obvious, but there is no clear evidence of dilatory tactics on Sharon’s part. On the other hand, there is some indication Paul caused a significant delay by insisting on a subpoena before providing his military records. Moreover, dilatory tactics have been held as justifying other relief, including monetary relief, even in child support cases. That remedy was suggested in Cumberland and considered and declined by the chancellor in this case.
¶22. Downward retroactive modification of child support remains prohibited by both statute and stare decisis provided by our highest court, which we must follow.
¶ 23. THE JUDGMENT OF THE CHANCERY COURT OF MADISON COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, ROBERTS, CARLTON, MAXWELL AND JAMES, JJ., CONCUR.