# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2019-CA-00891-COA

## CONSOLIDATED WITH

## NO. 2014-CA-01724-COA

**PAUL LACOSTE**                                                            **APPELLANT**

**v.**

**LAURA LACOSTE**                                                           **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 10/22/2018 |
| TRIAL JUDGE: | HON. CYNTHIA L. BREWER |
| COURT FROM WHICH APPEALED: | MADISON COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | MATTHEW ALLEN BALDRIDGE |
| ATTORNEY FOR APPELLEE: | G. CHARLES BORDIS IV |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | AFFIRMED - 03/30/2021 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE BARNES, C.J., WESTBROOKS AND SMITH, JJ.**

**WESTBROOKS, J., FOR THE COURT:**

¶1.    Paul Lacoste appeals from the Madison County Chancery Court's decision regarding the equitable distribution of marital assets.  Finding no error, we affirm.

## FACTS

¶2.    Paul and Laura were married in April 2006 and separated in December 2012.  Two children were born of the marriage.  On January 2, 2013, the Lacostes filed for a divorce in the Madison County Chancery Court.  Laura was granted a divorce based on habitual cruel and inhuman treatment on March 20, 2014.

¶3. The chancellor ordered Paul to pay $1,000 monthly in rehabilitative alimony for twenty-four months. Laura was awarded sole custody of the couple's children, and Paul was granted visitation. Paul was ordered to pay $4,280 in child support monthly. School and childcare expenses were addressed, as were insurance and tax issues. Laura was awarded ownership of the marital home, her vehicle, two bank accounts, the children's college trust accounts, and various personal property. Paul received all interest in his business, Next Level Sports LLC (NLS), also known as Paul Lacoste Sports—a fitness training company owned and operated by Paul—his vehicle, two bank accounts, and various personal property. After the division of property, Paul was ordered to pay Laura $73,000 within ten years for her interest in the marital estate. Paul was also ordered to pay $5,000 toward Laura's attorney's fees.

¶4. On March 28, 2014, Paul filed a motion for a new trial and to clarify and amend the chancellor's opinion and final judgment. Laura filed a motion for reconsideration. A hearing was held on November 14, 2014, following which the chancellor denied both motions. Paul appealed the chancellor's denial of his motion for a new trial, making numerous allegations of error. On July 19, 2016, this Court reversed and remanded for further proceedings as to the valuation of Paul's business. We also remanded for the chancellor to revisit the equitable distribution of property since it hinged on the business's valuation. We affirmed the chancellor's decisions as to the remaining issues, including child support.

¶5. During the pendency of Paul's first appeal, both Paul and Laura filed requests for modification with the chancery court. These motions were stayed until our decision was

rendered. On January 12, 2018, the chancellor held a hearing on the remanded issues. A trial

on the requests for modification was held on March 15, 2018. The chancellor entered a final

judgment and issued an opinion covering all issues on October 22, 2018. The chancellor

denied Laura's request for increased alimony, granted Paul's request for decreased child

support payments, denied Paul's request for retroactive reduction of child support payments,

and classified and equitably distributed the parties' marital assets.

¶6.     Paul now appeals again, raising two issues: (1) whether the chancellor erred in

denying his request for a retroactive reduction of his child support obligation; and (2)

whether the chancellor erred in dividing the marital assets subsequent to the revaluation of

his business.

## STANDARD OF REVIEW

¶7.     We review a chancellor's factual findings for abuse of discretion. *McNeil v. Hester*,

753 So. 2d 1057, 1063 (¶21) (Miss. 2000). "The findings of a chancellor will not be

disturbed on review unless the chancellor was manifestly wrong, clearly erroneous, or

applied the wrong legal standard." *Id*. Questions of law are reviewed de novo. *Irving v.*

*Irving*, 67 So. 3d 776, 778 (¶11) (Miss. 2011).

## DISCUSSION

### A.     Whether the chancellor erred in denying Paul's request for a retroactive reduction of his child support obligation.

¶8.     Paul failed to provide the chancellor with any caselaw in support of his request for the

retroactive modification of child support payments.[1] He states in his briefing to us that the chancellor erred in "rel[ying] on current Mississippi law" when deciding this issue, but he neglects to specify any improper legal standard the chancellor applied. The chancellor's opinion includes caselaw that we are bound to follow in support of her finding that a retroactive reduction of child support payments would be erroneous.

¶9. "[C]hild support payments vest in the child as they accrue." *Tanner v. Roland*, 598 So. 2d 783, 786 (Miss. 1992). As correctly stated in the chancellor's opinion, "'[e]ach payment that becomes due and remains unpaid becomes a judgment against the supporting parent[, and] [t]he only defense thereto is payment.' Therefore, a retroactive reduction in child support would be in error." *Grissom v. Grissom*, 952 So. 2d 1023, 1030 (¶15) (Miss. Ct. App. 2007) (citations omitted) (quoting *Tanner*, 598 So. 2d at 786).

¶10. Although not referenced by the chancellor, Mississippi Code Annotated section 43-19-34(4) (Rev. 2015) also prohibits a downward retroactive modification of child support payments. In his appeal, Paul argues that section 43-19-34(4) is unconstitutional. This issue is reviewed de novo, but based on the record before us, Paul has raised the issue of the constitutionality of this statute for the first time on appeal. As such, we are not required to

[1] The record before us does not contain the motions for contempt or the amendments thereto that gave rise to the judgment from which Paul appeals. Laura states that Paul did not initially request a retroactive modification of his child support obligation and that he filed amended pleadings to include this request without asking leave of court. The docket sheet from the chancery court shows that Laura filed an answer to Paul's amended motion for contempt. In the event Laura objected to the document, the proper course of action would have been for her to file a motion to strike. Because she filed an answer, we assume that Laura consented to the amended document. Even if the amended motion for contempt was improperly before the chancellor, Laura was not prejudiced because the additional relief Paul requested was not granted by the chancellor, and we affirm this decision.

render a decision on this legal theory. *See 5K Farms Inc. v. Miss. Dep't of Revenue*, 94 So. 3d 221, 224 (¶12) (Miss. 2012) ("The general rule is that [an appellate court] will not address issues raised for the first time on appeal, particularly where constitutional questions are concerned."). Additionally, we note that Paul makes no actual argument and cites no legal authority in support of his claim that the enforcement of this statute resulted "in an unconstitutional taking of [his] finances"; instead, he argues that equity supports a retroactive modification of his child support payments.

¶11. Section 43-19-34(4) unequivocally states that "[a]ny order for the support of minor children, whether entered through the judicial system or through an expedited process, shall not be subject to a downward retroactive modification." While noting the applicability of the statute, Paul cites to Justice Pierce's concurring opinion to bolster his argument that in this instance, "equity and fairness" call for retroactive modification due to the existence of "extraordinary or compelling circumstances." *A.M.L. v. J.W.L.*, 98 So. 3d 1001, 1025 (¶70) (Miss. 2012) (Pierce, J., concurring). In order to reach his desired outcome, Paul splices Justice Pierce's concurrence in *A.M.L.* with this Court's decision in *Frazier v. Frazier*, 136 So. 3d 1068 (Miss. Ct. App. 2013). Paul suggests that the father in *Frazier* was only denied a downward retroactive modification of child support because he contributed to a year-long delay in his motion being heard. *Frazier*, 136 So. 3d at 1073 (¶21). Specifically, Paul maintains that he did not cause the delay, and if the chancellor had entertained his motion earlier, his child support obligations would have been reduced sooner.

¶12. Equity is not on Paul's side. The record indicates that after filing his initial motion

for contempt and modification, Paul filed four motions for a continuance, a motion to stay, and a motion to extend trial dates. It is disingenuous for him to now attempt to blame the chancellor for a delay that he requested. Additionally, Paul unilaterally chose not to pay the full amount of court-ordered child support and the chancellor held him in contempt based on arrearages of over $80,000. He did not appeal the order finding him in contempt, and this is an improper manner in which to re-litigate the assessment of arrearages. Lastly, we disagree with Paul's "alternate ending" to our holding in *Frazier*. As we stated in *Frazier*, "[d]ownward retroactive modification of child support remains prohibited by both statute and stare decisis provided by our highest court, which we must follow." *Id.* at 1073 (¶22).

¶13. This Court is not empowered to grant Paul any relief in the form of a retroactive reduction of his child support obligations nor, based on his conduct, do we believe he is deserving of relief. The chancellor did not err in her determination.

B. **Whether the chancellor erred in dividing the marital assets subsequent to the revaluation of Paul's business.**

¶14. In our ruling on Paul's first appeal, we found that the chancellor had insufficient evidence before her on which to base the valuation of NLS and remanded the issue for a new determination based on adequate information. *Lacoste v. Lacoste*, 197 So. 3d 897, 909 (¶46) (Miss. Ct. App. 2016). Paul argues that the chancellor "applied the incorrect legal standard in valuing the business of NLS . . ." and placed too much emphasis on his income-generating ability via NLS. We find that the chancellor properly relied upon one of the three approved methods of business valuation and properly considered the *Ferguson* factors as a whole in making a decision regarding equitable distribution. No grounds exist for us to overturn her

6

ruling.

¶15. In distributing a marital estate, a chancellor first must classify each asset as marital or non-marital property and then equitably divide the marital property according to the factors first articulated in *Ferguson v. Ferguson*, 639 So. 2d 921 (Miss. 1994). "[T]he foundational step to make an equitable distribution of marital assets is to determine the value of those assets based on competent proof." *Dunaway v. Dunaway*, 749 So. 2d 1112, 1118 (¶14) (Miss. Ct. App. 1999). As the chancellor properly decided in this instance, expert testimony was "essential to establish valuation sufficient to equitably divide property . . . ." *Mace v. Mace*, 818 So. 2d 1130, 1134 (¶15) (Miss. 2002) (quoting *Ferguson*, 639 So. 2d at 929).

¶16. The chancellor originally assigned Laura 54% of the assets and 83% of the debt. Paul was assigned 46% of the assets and 17% of the debt. The chancellor also awarded Laura a $73,000 "equalizing payment." On remand, a court-appointed expert, James Koerber, valued NLS at $13,900 based on the asset-valuation method, as opposed to the previously assigned value of $347,417.32. Koerber also properly excluded any value for goodwill. Paul was again awarded the full value of his company, NLS, but there was no reallocation of any of the other assets or of Laura and Paul's debt. This left Laura with 91% of the assets and 90% of the debt. Paul was given 9% of the assets and the remaining 10% of the debt. The chancellor also changed her decision to award Laura the additional $73,000 payment (which included amounts to compensate for dissipation of marital assets by Paul). Paul argues that the chancellor did not properly take the revaluation of NLS into account, which led to an

7

inequitable distribution of marital assets. Not surprisingly, he does not complain that the marital debt was improperly assessed.

¶17. One must keep in mind that "[e]quitable distribution does not mean equal distribution." *Lauro v. Lauro*, 924 So. 2d 584, 590 (¶23) (Miss. Ct. App. 2006) (citing *Chamblee v. Chamblee*, 637 So. 2d 850, 863-64 (Miss. 1994)); *see Parker v. Parker*, 641 So. 2d 1133, 1137 (Miss. 1994) ("Mississippi is not a community property state"; thus, the chancellor has no obligation to divide the marital property equally.). "In presiding over a divorce case, the chancellor's goal is to achieve equity." *Humphries v. Humphries*, 904 So. 2d 192, 199 (¶24) (Miss. Ct. App. 2005). We therefore give the chancellor broad inherent powers to achieve that goal. "The matter is committed to the discretion and conscience of the chancellor, having in mind all the equities and other relevant facts and circumstances." *Id.* In *Carter v. Carter*, 98 So. 3d 1109 (Miss. Ct. App. 2012), this Court stated, "As long as *Ferguson* is properly applied, equitable divisions may indeed be lopsided." *Id.* at 1113 (¶12).

¶18. We are fully cognizant of the fact that the chancellor awarded Paul a smaller percentage of the parties' assets (as was the chancellor); however, we find in light of our highly deferential standard of review, this fact, standing alone, is an insufficient ground for reversal. *See Seale v. Seale*, 150 So. 3d 987, 991-92 (¶¶16-18) (Miss. Ct. App. 2014) (affirming a decision to allocate $77,107 in marital assets and $38,334 in marital debt to the wife and $31,513 in marital assets and $292,127.12 in marital debt to the husband based on the *Ferguson* factors, noting specifically the parties' striking disparity in income); *Seymour*

*v. Seymour*, 960 So. 2d 513, 519 (¶¶13-15) (Miss. Ct. App. 2006) (affirming a chancellor's award of 97% of the marital property, including the marital home, to the wife and ordering that the husband pay the outstanding debt on the marital home because the facts and circumstances—including the husband's much larger income and separate assets—supported such a division); *Redd v. Redd*, 774 So. 2d 492, 496 (¶15) (Miss. Ct. App. 2000) (affirming a chancellor's division of marital property that resulted in the wife's receiving only 23% of the entire marital estate). As stated by the *Ferguson* court, the goals of equitable distribution are a fair division of marital property based on the facts of each case and termination of the legal relationship in a manner in which each party may realize self-sufficiency. *Ferguson*, 639 So. 2d at 929. "When the facts and circumstances warrant an equitable division of the marital estate of one-half or greater and such a division complies with the *Ferguson* principles, then we are duty bound to let such a distribution stand." *Phillips v. Phillips*, 904 So. 2d 999, 1003 (¶13) (Miss. 2004).

¶19. Paul recognizes that in order to affect a 46/54 split of assets as in the original decision, Laura would owe him money. There is substantial evidence in the record supporting the chancellor's exercise of discretion in equitably dividing the marital property and awarding a larger share of the assets and debt to Laura. The chancellor's original order spends eight pages discussing the *Ferguson* factors and applying them to the facts of this case. The most recent order notes Laura's lack of income and "participation in the marital business and developing the company website, [as well as] substantially contribut[ing] to the home environment for the benefit of the entire family." The chancellor clearly considered the best

manner in which to allow each party to "realize self-sufficiency." The chancellor found that Laura left the marriage with no income and that "[a]n equal split of the marital assets would not be equitable given the parties' relative financial conditions and in light of the animosity between the parties. . . ." Additionally, the chancellor noted that "[t]he significant deviation from a 50/50 split is, in addition to the consideration of the *Ferguson* factors, equitable given the need for an offset with marital property to avoid additional alimony, to allow [Laura] the means to satisfy the marital debts assigned to her, and to avoid awarding her a percent interest in the business." And in re-evaluating the assignment of assets and debt, the chancellor also changed her decision to award Laura the additional $73,000 payment (which included amounts to compensate for dissipation of marital assets by Paul). In this instance, the chancellor's uneven distribution of the marital assets, based on her thorough consideration of the *Ferguson* factors, is not tantamount to inequitable distribution. As such, we find no manifest error in the chancellor's property division.

¶20. **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., GREENLEE, McDONALD, McCARTY, SMITH AND EMFINGER, JJ., CONCUR. LAWRENCE, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION.**

10