ROBERTS, J.,
for the Court.
¶ 1. This appeal follows Twyla Holloway’s successful counterclaim for a divorce based on Joel Holloway’s uncondoned adultery. On appeal, Joel claims the Jones County Chancery Court erred when it ordered him to pay Twyla $1,400 per month in child support. Joel also claims the chancellor erred when he ordered him to pay Twyla approximately $11,000 in attorneys’ fees. After careful consideration, we affirm in part and reverse and remand in part.
FACTS AND PROCEDURAL HISTORY
¶ 2. Joel and Twyla were married on August 26, 1988. They had three children during their marriage. Their marriage deteriorated, and Joel and Twyla separated in June 2006. They had been living in Jones County at that time.
¶ 3. Joel filed a complaint for divorce and a motion for temporary relief. Joel claimed he was entitled to a divorce based on Twyla’s alleged cruel and inhuman treatment. Alternatively, Joel claimed that he and Twyla should divorce because they had irreconcilable differences.
¶ 4. Twyla filed an answer to Joel’s complaint. She also filed a counterclaim for a divorce based on uncondoned adultery or habitual cruel and inhuman treatment. Alternatively, Twyla also requested a divorce based on irreconcilable differences.[1]
¶ 5. On June 12, 2007, the chancellor conducted the first part of what would be a bifurcated trial. The first part of the bifurcated proceedings involved Joel’s complaint for divorce and Twyla’s counterclaim for divorce. The testimony and other evidence that was introduced during the first part of the bifurcated proceedings will be discussed in greater detail as necessary. Suffice it to say, the chancellor did not find that Joel was entitled to a divorce based on Twyla’s alleged cruel and inhuman treatment, but the chancellor did find that Twyla was entitled to a divorce based on Joel’s uncondoned adultery.
¶ 6. The parties reconvened on August 7, 2007, and announced that Joel and Twyla had agreed on the division of their marital property. After presenting evidence on the remaining issues, including Joel’s child support obligation and Twyla’s request that Joel pay her attorneys’ fees, the chancellor took the remaining matters under advisement.
¶ 7. On February 7, 2008, the chancellor issued his findings of fact and conclusions of law. The chancellor found that Joel’s adjusted gross monthly income was $6,403.41. The chancellor then noted that Joel was obligated to pay Twyla 22% of that figure each month to support the children. Additionally, the chancellor recognized that because Joel’s gross annual *60 income was more than $50,000, it was necessary to make written findings regarding whether it was reasonable to apply the statutory child support guidelines. The chancellor detailed that one of the children had been diagnosed with Attention Deficit Disorder (ADD). Joel and Twyla had enrolled that child in Heidelberg Academy, a private school, so she would receive more individual attention in a smaller classroom setting. The other two children also attended Heidelberg Academy. Based on the expenses that accompanied attending Heidelberg Academy, the chancellor found that “it [was] appropriate to deviate from the guidelines in this case based upon the special needs of [the child], [and] the extra expense of Heidelberg Academy which the parties agreed for the children to attend.”
¶ 8. The chancellor also addressed Twy-la’s request that Joel pay her attorneys’ fees. The chancellor noted that Joel did not object to the statement prepared by Twyla’s attorneys. Accordingly, the chancellor ordered Joel to pay Twyla $11,071.72 in attorneys’ fees. Aggrieved, Joel appeals.
STANDARD OF REVIEW
¶ 9. This Court leaves a chancellor’s findings of fact undisturbed when those findings are supported by substantial evidence unless the chancellor abused his discretion or was manifestly wrong. Flechas v. Flechas, 791 So.2d 295, 299(¶7) (Miss.Ct.App.2001). Additionally, we will also reverse the chancellor’s decision if the chancellor applied an erroneous legal standard. Id. However, we conduct a de novo review of questions of law. Morreale v. Morreals, 646 So.2d 1264, 1267 (Miss.1994).
ANALYSIS
I. CHILD SUPPORT
¶ 10. Joel finds fault in two aspects of the chancellor’s decision regarding his child support obligation. First, Joel claims the chancellor erred by incorrectly calculating his adjusted gross income. Second, Joel claims the chancellor erred in finding certain facts that influenced the chancellor’s child support determination.
A. CALCULATION METHODOLOGY
¶ 11. Mississippi Code Annotated section 43-19-101(3)(a)-(b) (Rev.2004) provides the parameters for determining a party’s adjusted gross income for child support purposes in the following manner:
(a) Determine gross income from all potential sources that may reasonably be expected to be available to the absent parent including, but not limited to, the following: wages and salary income; income from self[-]employment; income from commissions; income from investments ...; interest income and income on any trust account or property; absent parent’s portion of any joint income of both parents; ... annuity and retirement benefits ...; any other payments made by any person, private entity, federal or state government or any unit of local government; alimony; any income earned from an interest in or from inherited property; any other form of earned income....
(b) Subtract the following legally mandated deductions:
(i) Federal, state and local taxes. Contributions to the payment of taxes over and beyond the actual liability for the taxable year shall not be considered a mandatory deduction;
(ii) Social security contributions;
(iii) Retirement and disability contributions except any voluntary retirement and disability contributions[.]
*61 ¶ 12. The chancellor calculated Joel’s income by extrapolating figures from Joel’s pay stub for the week beginning May 30, 2007, and ending June 6, 2007. That pay stub indicated that Joel had been paid $31,912 over the course of the twenty-two weeks that had passed at that point in 2007. The chancellor stated that “[according to [Joel’s] wage statement through June 6, 2007, his annual adjusted gross income projected over 52 weeks was $76,840.92. This figure divided by 12 equals $6,403.41 per month as his adjusted gross income. Child support guidelines for three children calls for 22% which equals $1,408.75 per month.”
¶ 13. The chancellor did not specifically state how he reached his conclusion regarding Joel’s projected annual income. As best we can tell, the chancellor divided Joel’s year-to-date income of $31,912 by twenty-two weeks, and then multiplied the result by fifty-two weeks. However, when we perform that calculation, our result is a projected gross annual income of $75,428.36, rather than the chancellor’s projected “annual adjusted gross income” of $76,840.92.
¶ 14. In any event, it is important to note that Joel’s year-to-date earnings of $31,912 as of June 6, 2007, were his gross earnings, and none of the mandatory deductions set forth in section 43-19-101(3)(b) were subtracted from that figure. The pay stub that the chancellor used to form his calculations clearly indicated that Joel’s gross earnings up to that date were $31,912, and it also clearly reflected that, as of that date, Joel had paid a total of $6,904.65 in federal and state taxes, social security, and Medicare payments. The chancellor did not deduct those figures from Joel’s gross income of $31,912. The failure to do so is clear error, as section 43 — 19—101(3)(b) requires that those figures be deducted from a non-custodial parent’s gross income.
¶ 15. This Court dealt with a similar calculation error in Lee v. Stewart ex rel. Summerville, 724 So.2d 1093, 1097(¶ 9) (Miss.Ct.App.1998). In Lee, this Court held that, because a chancellor did not subtract the mandatory deductions from a non-custodial parent’s gross income, it was appropriate to reverse the chancellor’s award of child support and remand the matter to the chancery court for a recalculation of the child support obligation. Id. Having been unable to duplicate the chancellor’s calculations or determine that the chancellor subtracted the mandatory statutory deductions from Joel’s gross income, we remand this matter to the chancery court for a recalculation of Joel’s child support obligation. As Joel’s testimony indicated that he had sources of income aside from his primary employment on an off-shore oil platform, no portion of this analysis should be construed as a limitation of the sources of Joel’s income that the chancellor may consider or a directive that the chancellor is strictly limited to Joel’s June 6, 2007, pay stub or any other particular evidence including the evidence presented at the earlier court dates.[2]
*62 B. CHILD SUPPORT GUIDELINES
¶ 16. Joel claims the chancellor improperly deviated from the statutory child support guidelines. Joel raises issues regarding whether it was necessary for the three children to continue to attend Heidelberg Academy and whether the chancellor erred in finding certain facts. Additionally, a portion of Joel’s argument can also be described as an invitation to render a bright-line rule regarding the proper application of the child support guidelines and the statutory requirement that the chancellor make written findings as to whether following the statutory child support guidelines is reasonable when a non-custodial parent has an adjusted gross income greater than $50,000. See Miss. Code Ann. § 43-19-101(4) (Rev.2004). This is evident from the following excerpt from Joel’s brief:
Some courts deem the $50,000.00 amount as a hard cap and will set child support based upon that amount and will only deviate if a party provides a valid reason to do so. In other courts, the judges will apply the child support percentage upon the total adjusted gross income of a party and will deviate only if someone can pi’ovide a valid reason to do so. The ambiguity of the statute has left open the various applications by our courts. It would behoove both bench and the bar of this state for this Court to resolve the ambiguity so that a uniform application could be administered statewide.
¶ 17. We decline to render a.bright-line rule under the present circumstances. First and foremost, as we have remanded the chancellor’s calculation of child support, this issue is moot. As for Joel’s arguments regarding where the children attend school and his claims that the chancellor erred in finding certain facts, we decline to make any comments on the chancellor’s reasoning because any such comments may be unintentionally taken as directions on remand. Accordingly, we do not consider Joel’s arguments under this heading.
II. ATTORNEYS’FEES
¶ 18. As previously mentioned, the chancellor ordered Joel to pay Twyla $11,071.72 in attorneys’ fees. Joel claims the chancellor erred in that decision because Twyla did not present sufficient evidence that she could not pay her attorneys’ fees. According to Joel, because the chancellor awarded her the entire balance of her retirement account, Twyla had sufficient funds to pay her own attorney. Joel cites the Mississippi Supreme Court’s decision in Crowe v. Crowe, 641 So.2d 1100, 1105 (Miss.1994) for the proposition that if “a party is financially able to pay [his or] her attorney, an award of attorneys’ fees is not appropriate.”
¶ 19. “Generally the award of attorney’s fees in a divorce case is left to the discretion of the trial court.” Cheatham v. Cheatham, 537 So.2d 435, 440 (Miss.1988). We cannot find that the chancellor abused his discretion. As Twyla notes, the Mississippi Supreme Court has held that a chancellor does not abuse his or her discretion when he or she awards a former wife attorneys’ fees where, if she were to pay such fees herself, she would severely deplete her savings. Hemsley v. Hemsley, 639 So.2d 909, 915 (Miss.1994). Additionally, Twyla testified that she was unable to pay her attorneys’ fees and that she had to *63 borrow money from her mother to pay a portion of her attorneys’ fees.
¶ 20. What is more, Joel’s numerous deceptions throughout the proceedings forced Twyla to incur additional attorneys’ fees. Joel unsuccessfully claimed that he was entitled to a divorce from Twyla because of her cruel and inhuman treatment of him. The basis of Joel’s claim was that Twyla did not give him what he considered to be sufficient attention, did not want to go out to eat, did not go to bed until he went to bed, and had not had sex with him for a year prior to their separation. However, most of Joel’s allegations do not rise to the level of cruel and inhuman treatment, and his claim that Twyla had not had sex with him for a year prior to the separation was contradicted by Twyla’s testimony.
¶ 21. Additionally, Twyla accused Joel of having an adulterous affair with Tracy Pryor. During the discovery process, Twyla asked Joel to admit that he had an extramarital affair, but Joel denied that he had. Joel maintained his denial in his responses to Twyla’s interrogatories. At trial, Joel denied that he had sex with anyone other than Twyla during their marriage. When asked whether he had sex with Tracy during the time he was married to Twyla, Joel evasively responded, “[tjhere’s no proof of it.” However, Tracy testified and admitted that she and Joel had sex while Joel was married to Twyla. Kathy Loper testified that she owned a tanning business and that Joel and Tracy frequently locked themselves in the same room. Those meetings took place during Joel’s marriage to Twyla. Again, Twyla was forced to incur additional legal expenses because of Joel’s lies and general obstinate evasiveness.
¶ 22. Joel was asked whether he was an alcoholic. Joel evasively responded, “not that I know of.” Despite his characterization that he was not an alcoholic, Joel testified that: (1) he attended Alcoholics Anonymous meetings; (2) he drinks “[t]wo or three times” each week; (3) he “gets drunk” approximately once a week, and he drinks “[pjrobably a good case” of beer to become drunk; (4) his drinking caused problems in his and Twyla’s marriage; (5) he “probably drank a couple [beers] before [one of the kid’s] ball game[s]”; (6) he had previously wrecked a car while under the influence of alcohol; (7) one week prior to the June 2007 hearing, he had been arrested for driving under the influence of alcohol; (8) “once or twice” he had driven with the children in his truck after he had been drinking; (9) his oldest daughter had to get him to pull his truck over so she could drive because she believed he was intoxicated; and (10) he had been admitted in a facility to treat an alcohol dependence. Again, Twyla was forced to incur additional attorneys’ fees to demonstrate a fact that Joel evasively denied in the face of overwhelming evidence. As the chancellor noted, “[b]eing untruthful to the Court has its penalties.”
¶ 23. We find no error in the chancellor’s decision to award attorneys’ fees. Twyla testified that she could not pay her attorneys’ fees. Joel did not object to the amount of fees that were requested. Twy-la persuasively argues that she would not have had to incur a portion of her fees if Joel had been truthful in many instances. Joel lied when he testified that he did not have an adulterous affair. He lied when he testified that he was not an alcoholic. Joel made an unfounded claim that he was entitled to a divorce based on Twyla’s cruel and inhuman treatment. That claim was dismissed pursuant to Mississippi Rule of Civil Procedure 41(b) after Joel rested his case. Accordingly, we find no merit to Joel’s argument on appeal.
*64 III. ATTORNEYS’ FEES ON APPEAL
¶ 24. Twyla filed a motion for attorneys’ fees on appeal. Generally, this Court has awarded attorneys’ fees on appeal “in the amount of one-half of what was awarded in the lower court.” Lauro v. Lauro, 924 So.2d 584, 592(¶ 33) (Miss.Ct.App.2006). In Lauro, this Court granted the former wife’s request for attorneys’ fees despite the simultaneous finding that it was necessary to remand a separate matter regarding visitation. Id. at (¶ 35). Consequently, the fact that we are remanding the appropriate calculation of child support does not, in and of itself, preclude the possibility that we award attorneys’ fees on appeal. Accordingly, we grant Twyla’s motion for attorneys’ fees on appeal and award Twyla $5,535.86 — one-half of $11,071.72.
1125. THE JUDGMENT OF THE JONES COUNTY CHANCERY COURT IS AFFIRMED IN PART AND REVERSED AND REMANDED IN PART FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED EQUALLY BETWEEN THE PARTIES.
KING, C.J., LEE AND MYERS, PJJ., GRIFFIS AND BARNES, JJ., CONCUR. IRVING, ISHEE AND MAXWELL, JJ., CONCUR IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. CARLTON, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION.

. Additionally, Twyla requested temporary relief. After a hearing, the chancellor entered a temporary order giving Twyla temporary primary physical custody of the children and ordering Joel to pay temporary child support.

. Joel testified that when he was not working off-shore, he sometimes worked for his brother-in-law’s metal roofing company. Joel testified that he earned $350 in one week and that he was paid in cash. When asked about that income, Joel testified as follows:
Let me clarify this for you. Get it straight right here. I want to nip it in the bud. Whenever I come home from work, I went and helped them the last time I was home for one week. I helped him a little bit yesterday. I do that because I want to.
Joel also testified that the money he earned working for his brotber-in-law was “for [his] benefit and [his] benefit only” and that it was "money [he] made for [him]self to benefit [him]." When asked whether he was going to report that income on his tax returns, Joel *62 said, "I doubt it.” When Twyla’s attorney asked whether Joel planned to continue to earn extra money working for his brother-in-law, Joel testified, "I don’t think that's none [sic] of nobody [sic] else’s business” and that "you just keep digging and digging and digging; and that’s burning me up.”