ROBERTS, J.,
for the Court:
¶ 1. On September 4, 2009, Barbara Carraway Dogan (Barbara) filed for divorce from David Wade Dogan III (David) citing irreconcilable differences. Then, on February 11, 2010, Barbara filed an amended complaint for divorce, adding the ground of habitual cruel and inhuman treatment, and a motion for temporary relief. The Hinds County Chancery Court entered its final judgment of divorce on April 14, 2011, granting Barbara and David a divorce on the ground of habitual cruel and inhuman treatment. Additionally, the chancellor provided an equitable distribution of Barbara and David’s assets and awarded Barbara rehabilitative alimony and permanent periodic alimony. Barbara filed a motion to alter or amend the final judgment or, in the alternative, a motion for a new trial. The chancellor denied Barbara’s motions; Barbara now appeals. ■
FACTS AND PROCEDURAL HISTORY
¶ 2. Barbara and David were married on May 23, 1981. The marriage produced three children: Patrick Hunter Dogan, born February 12, 1986; Mary Cameron Dogan, born January 23, 1990; and Ann Hamilton Dogan, born March 21, 1991. The couple separated in July 2009 when David moved out of the marital home. At the time, both Barbara and David were Hinds County residents. The initiation of divorce proceedings soon followed.
¶ 3. Barbara initially filed for divorce on September 4, 2009, citing irreconcilable differences. She then filed an amended complaint for divorce on February 11, 2010, adding the grounds of habitual cruel and inhuman treatment and constructive desertion on February 11, 2010. She also filed a motion for temporary relief. David filed an answer to Barbara’s amended complaint for divorce and motion for temporary relief. On April 27, 2010, David filed an amended answer to Barbara’s amended complaint for divorce and motion for temporary relief. He also filed a counterclaim for divorce seeking a divorce on the ground of habitual cruel and inhuman treatment or, in the alternative, irreconcilable differences. Several days later, Barbara filed'her second amended complaint for divorce and motion for temporary relief. Her answer to David’s counterclaim for divorce was filed on July 27, 2010. The chancellor held a hearing on Barbara’s motion for temporary relief on July 27, 2010 and issue a temporary order on July 29, 2010.
¶ 4. In its temporary order, the chancellor granted joint legal and physical custody of Mary Cameron and Ann Hamilton. *1120 David was ordered to pay $200 per month per child in temporary child support to be paid directly to each child. David would also pay all college expenses of Mary Cameron and Ann Hamilton, and continue providing health insurance and other medical expenses for them. David was also required to continue providing health insurance for Barbara, but Barbara was responsible for any non-covered medical expenses. The chancellor ordered David to pay Barbara $5,000 per month in alimony. Barbara was granted use and occupancy of their East Manor home, and she was directed to use the alimony to pay the home’s expenses, her automobile expenses, utilities, and anything else she deemed appropriate. David retained use and occupancy of his home on Grayhawk Parkway. Both Barbara and David retained the use of their respective automobiles. Lastly, the chancellor ordered both parties to engage in mediation.
¶ 5. The mediation was ultimately unsuccessful; however, over the course of mediation and trial, Barbara and David stipulated to the following: the value of Dogan & Wilkinson PLLC was $72,500; the value of Barbara’s interest in her business Alternatives and Dispute Resolution (ADR) was $3,682; the parties would share joint physical custody of Ann Hamilton; and because both Barbara and David made equal contributions to the marital estate, whatever was determined to be marital would be divided equally.[1] The chancellor held a hearing on the remaining issues on September 21, 2010, and September 23, 2010. At the hearing, both Barbara and David testified as to their incomes and assets. Additionally, David confirmed that Barbara had sufficient grounds for a divorce on the ground of habitual cruel and inhuman treatment and that his activities would “make it impossible for [Barbara] to remain in the marriage.” The chancellor heard additional testimony from Dr. James Hurley, a Presbyterian minister and professor of Marriage and Family Therapy and Counseling; Alan Lange, resident of Kinetic Staffing, a legal recruiting business; Joe Dick, a representative from Trustmark Bank; Wilson Day, a certified divorce planner; and Amanda Phelps, office manager for Dogan & Wilkinson LLC.
¶ 6. The chancellor entered its opinion on April 12, 2011. The parties received joint legal and physical custody of Ann Hamilton, with Ann Hamilton deciding for herself which parent to spend time with when home from college. In addition to paying all of Ann Hamilton’s medical needs and maintaining a life insurance policy benefitting her, David was also ordered to pay $400 per month in child support directly to Ann Hamilton. Ann Hamilton’s college expenses were to be paid from Ann Hamilton’s educational fund if any funds remain, and the trust fund established by her grandfather if she raised her grade-point average to a “B” average. If these funds were unavailable, David was to be “solely responsible” for Ann Hamilton’s college expenses.
¶ 7. Using the factors in Ferguson v. Ferguson, 639 So.2d 921, 925 (Miss.1994), the chancellor then made an equitable distribution of property. First, the chancellor established the separate estates of both Barbara and David. He found that David had no separate estate. Barbara’s separate estate was as follows: home furnishings — $27,605; jewelry — $12,255; Regions account number 3366 — $3,372; Trustmark account number 9106 — $22,387; Regions CD number 1616 — $10,238.51; First Com- *1121 mereial CD — $8,177.90; Pershing account number 0815 — $4,294; and Pershing account number 0476 — $56,295. This totals $144,624.41. Additionally, Barbara has one trust valued at $30,856 and the Thomas L. Carraway Jr. Living Trust (Living Trust) valued at approximately $250,000 to $300,000. Including the trusts, Barbara’s separate estate was valued between $425,480.41 and $475,480.41.
¶ 8. The chancellor then distributed the remaining assets that were defined as marital property. David was awarded the following assets: the Grayhawk home— $61,000; Dogan & Wilkinson LLC— $72,500; wine collection and cooler— $8,000; Regions account number 8390— $385; Regions account number 5526— $985; Regions account number 4797— $778; automobile — $39,035; insurance policies from three different providers— $40,513, $23,506, $3,310; Dogan & Wilkinson LLC 401(k) — $106,664; home furnishings and personal items — $11,930; season tickets for University of Mississippi sporting events — $10,000; and attorney’s fees— $62,000. The chancellor found David’s total assets to be $443,606. Barbara received the following assets: East Manor home — $154,875; Alternatives & Dispute Resolution (ADR) — $3,682; jewelry— $20,095; Regions account number 9486— $761; Regions account number 0033— $362; Community Bank account number 5095 — $15,000; automobile — $23,650; David’s Pershing IRA — $72,312; home furnishings — $17,733 and $11,930; Pershing IRA — $38,746; and Pershing SEP— $14,782. Barbara also received six Mass-Mutual insurance policies valued at $0; $49,479; $11,745; $4,240; $3,069; and $2,836. She received a Northwestern Mutual insurance policy valued at $0. Lastly, Barbara received a TransAmerica Life insurance policy valued at $5,539. Her marital estate, not including her separate estate, was valued at $450,836.
¶ 9. After much discussion regarding David’s potentially fluctuating income, the chancellor determined that David’s gross monthly income was $19,000. Barbara’s monthly income was determined to be $648 with a gross earning capacity of $3,500 per month. Barbara was awarded $2,000 per month in rehabilitative alimony for sixty months and permanent periodic alimony of $2,000 per month. The final judgment of divorce was entered on April 14, 2011. Barbara filed a motion to alter or amend the judgment or, in the alternative, a motion for a new trial. The chancellor held a hearing on Barbara’s motions on June 15, 2011, and on June 29, 2011, he denied her motions.
¶ 10. Feeling aggrieved by the denial of her motions, Barbara now appeals and raises the following issues:
1. The chancellor erred in [determining] David’s gross income for the purpose[s] of child support and alimony.
2. The chancellor erred in his classification and division of the marital assets and debt.
3. The chancellor erred in his division of personal property.
4. The chancellor erred in failing to find that David has dissipated and depleted marital assets.
5. The chancellor erred in determining the proper amount of child support to be paid by David.
6. The [chancellor] erred in assigning a value of $250,000 to $300,000 to Barbara’s interest in the [Living Trust],
7. The chancellor erred in his ruling regarding [awards of] rehabilitative alimony and permanent periodic alimony.
8. The [chancellor] erred in failing to award Barbara attorney’s fees.
*1122 STANDARD OF REVIEW
¶ 11. In domestic-relations cases, our standard of review is limited. In re Dissolution of Marriage of Wood, 35 So.3d 507, 512 (¶ 8) (Miss.2010). The findings of the chancellor “will not be disturbed unless [they are] manifestly wrong or clearly erroneous.” Lowrey v. Lowrey, 25 So.3d 274, 285 (¶ 26) (Miss.2009) (citing Sanderson v. Sanderson, 824 So.2d 623, 625 (¶8) (Miss.2002)). “Under the standard of review utilized to review a [chancellor]’s findings of fact, particularly in the areas of divorce, alimony and child support, this Court will not overturn the [chancellor’s decision] on appeal unless [his] findings were manifestly wrong.” Wood, 35 So.3d at 512 (¶ 8) (quoting Duncan v. Duncan, 774 So.2d 418, 419 (¶ 4) (Miss.2000)). “The distribution of marital assets in a divorce will be affirmed if ‘it is supported by substantial credible evidence.’ ” Lowrey, 25 So.3d at 285 (¶ 26) (quoting Bowen v. Bowen, 982 So.2d 385, 393-94 (¶ 32) (Miss.2008)). Additionally, the decision of whether to award alimony, and if so, what amount, is left to the chancellor’s discretion. George v. George, 22 So.3d 424, 427 (IT 4) (Miss.Ct.App.2009) (citing Lofton v. Lofton, 924 So.2d 596, 599 (¶ 12) (Miss.Ct.App.2006)). “[T]he process of weighing evidence and arriving at an award of child support is essentially an exercise in fact-finding, which customarily significantly restrains this Court’s review.” Clausel v. Clausel, 714 So.2d 265, 266-67 (¶ 6) (Miss.1998) (quoting Gillespie v. Gillespie, 594 So.2d 620, 622 (Miss.1992)).
ANALYSIS
I. GROSS INCOME
¶ 12. On appeal, Barbara first claims that the chancellor erred in finding David’s monthly gross income was $19,000, and that as a result, the amount of alimony and child support she was awarded was also incorrect. Barbara alleges that David’s income should have been $25,809 per month and not $19,000 as the chancellor found or $15,000 as David listed on his Uniform Chancery Court Rule 8.05 financial statement.
¶ 13. The chancellor made several specific findings in regard to David’s income. He acknowledged that there had been significant conflicting testimony about David’s future income due to the bankruptcy of Durabla, a Dogan <& Wilkinson client. Du-rabla had not produced any fees for the firm since January 2010. The chancellor stated the following: “This [c]ourt acknowledges that David has had special draws in the past and has also been reimbursed for certain personal charges on his corporate American Express card. However, this [c]ourt cannot agree with Barbara that David can reasonably expect to gross as much as $35,042.” Further, he stated that “[i]t is virtually impossible for this [c]ourt to determine David’s exact gross monthly income given the drastic changes in his law practice and the fluid manner in which a law partner makes draws and incurs expenses.” The chancellor noted that David’s income on the loan document for the Grayhawk home reflected the average of his past two federal tax returns and did not take into account the changes to his and the firm’s loss of income from Durabla; thus, the loan document was not an accurate indicator of his current monthly income. In determining David’s monthly income, the chancellor found “that David’s average monthly income from the past five years of $34,411.40 is instructive in demonstrating David’s earning capacity but is not, alone, an accurate reflection of David’s current income.” The chancellor relied on Exhibit 12 depicting David’s January 2010 through September 2010 draws, to determine David’s monthly income of $18,750. Ultimately *1123 the chancellor found that David’s adjusted monthly income was $19,000.
¶ 14. Barbara also argues that David committed a fraud upon the court by stating on his Rule 8.05 financial statement that his monthly income was $15,000 and shortly thereafter stating on his home loan application that his monthly income was approximately $85,000. In Mississippi, the general rule is that fraud will not be presumed but must be affirmatively proven by clear and convincing evidence. See Hamilton v. McGill, 352 So.2d 825, 831 (Miss.1977); Taft v. Taft, 252 Miss. 204, 213, 172 So.2d 403, 407 (1965). Further, on appeal, there are four requirements to vacate a decree due to fraud:
(1) that the facts constituting the fraud, accident, mistake or surprise must have been the controlling factors in the effec-tuation of the original decree, without which the decree would not have been made as it was made; (2) the facts justifying the relief must be clearly and positively alleged as facts and must be clearly and convincingly proved; (3) the facts must not have been known to the injured party at the time of the original decree, and (4) the ignorance thereof at the time must not have been the result of the want of reasonable care and diligence.
Manning v. Tanner, 594 So.2d 1164, 1167 (Miss.1992). Barbara has failed to meet these requirements. First, the chancellor did not make his decision solely on David’s Rule 8.05 financial statement; therefore, the amount in his statement was not a controlling factor in the decree as is required under the first prong. Barbara also fails under prongs three and four because, assuming the discrepancy on the Rule 8.05 financial statement and loan application to be true, Barbara was aware of it at the time of the original decree. Additionally, the chancellor addressed the discrepancy and found that the amount of the loan application was an average of the last two federal tax returns and did not take into consideration the bankruptcy of Du-rabla and its financial impact on the firm.
¶ 15. Based on the facts before us, we cannot find that the chancellor was manifestly wrong or clearly erroneous in determining David’s monthly income was $19,000. The chancellor clearly considered a variety of factors in reaching his decision. The chancellor acknowledged David’s monthly income for previous years as well as the then-current year, looked at the evidence presented through David’s Rule 8.05 financial statement and the firm’s financial account, and determined that an accurate reflection of David’s income was $19,000. Based upon our standard of review, we do not find reversible error.
II. CLASSIFICATION OF PROPERTY AND EQUITABLE DISTRIBUTION
¶ 16. For the sake of judicial economy, we will review Issues 2, 3, and 6 under this heading.

A. Equitable Distribution

¶ 17. In making an equitable distribution of property, the chancellor must first classify each asset and debt as either marital or separate. Fitzgerald v. Fitzgerald, 914 So.2d 193, 197 (¶ 17) (Miss.Ct.App.2005). An asset or debt that is acquired or accumulated during the marriage is considered marital property, and all marital property is subject to equitable division. Hemsley v. Hemsley, 639 So.2d 909, 915 (Miss.1994). Assets not considered marital are deemed to be a party’s separate estate and are not subject to equitable division. See Fitzgerald, 914 So.2d at 197 (¶ 17). “[T]he chancellor is to value [ (using the fair market value) ] and equitably divide the marital property, em *1124 ploying the Ferguson factors as guidelines, in light of each party’s non-marital property.” Drumright v. Drumright, 812 So.2d 1021, 1025 (¶ 9) (Miss.Ct.App.2001). If after equitable division, the parties are adequately provided for, then nothing more is required; however, if there is a deficit for one party, then alimony should be considered. Id. (citing Kilpatrick v. Kilpatrick, 732 So.2d 876, 880 (¶ 16) (Miss.1999)).
¶ 18. In Issue 2, Barbara argues that the chancellor erred in classifying David’s Grayhawk home as marital debt and erred in allocating all debt from the East Manor home to her. According to Barbara, she will never directly benefit from the Gray-hawk home since the chancellor awarded David all the interest and equity in the home even though he used marital funds to purchase it. She claims that David’s estate should be credited with $311,000 in marital assets instead of just the $61,000 in equity. She further claims that the chancellor stated he would require David to repay Barbara for half of the marital funds used to buy the home in either lump sum or permanent periodic alimony. Further, Barbara claims that the chancellor erred in allocating all the debt owed on the East Manor home to her, because the mortgage is a joint mortgage, and David benefitted from the debt on this home as he lived in it for several years. Barbara argues that the debt on the East Manor home should have been marital debt assigned to David since he was responsible for paying the mortgage from the time the home was purchased.
¶ 19. Then, in Issue 3, Barbara claims that the chancellor failed to consider the value of home furnishings that David had previously removed from the marital home when determining David’s total of marital property. The chancellor found that David received $371,606 of marital property, but Barbara asserts that the correct total is $389,491 after adding in the property that was taken.[2]
¶ 20. It is well established that equitable distribution does not require an “equal” distribution. Wells v. Wells, 800 So.2d 1239, 1243 (¶ 7) (Miss.Ct.App.2001) (citing Draper v. Draper, 627 So.2d 302, 305 (Miss.1993)). In Kimbrough v. Kimbrough, 76 So.3d 715, 720 (¶¶ 17, 19) (Miss.Ct.App.2011), this Court stated that in cases of equitable distribution, we do not look at the division of one asset in isolation, but rather, whether the marital assets as a whole were divided equitably. Based upon our review of the record, we cannot find that the chancellor erred. The parties had agreed to a fifty/fifty split of the marital assets. The chancellor credited both parties with the amount of equity in their respective homes. Barbara received $154,875 in equity while David received $61,000. The chancellor also ordered them to pay the outstanding debt on their respective homes. Barbara would have this Court credit David’s estate with the appraisal value of his home instead of the only the equity value, while still having the equity value of her home credited to her estate with David being responsible for paying the remaining debt on the home. She has provided no authority for this Court to find such a division proper. The chancellor divided the marital property re- *1125 suiting in David’s share of the marital estate to be $443,606 and Barbara’s marital estate to be $450,836. As we stated above, the parties sought a fifty/fifty division, which the chancellor appears to have granted, with over $7,000 more of the overall assets in Barbara’s favor.
¶ 21. Because we cannot find that the chancellor erred in his classification and distribution of the parties’ marital assets, Issues 2 and 3 are without merit.

B. Valuation of the Residuary Trust

¶ 22. Barbara argues in Issue 6 that the chancellor erred in valuing her share of the Living Trust at $250,000 to $300,000. The Living Trust contains approximately $760,000 and may be partially funded by her step-mother Sylvia Carra-way’s home and half of its contents. Sylvia also has a trust from which she receives $55,000 per year for life, and if that trust is depleted, the Living Trust will feed Sylvia’s trust. The Living Trust also pays the maintenance and expenses associated with Sylvia’s home and premiums on a joint life-insurance policy that funds another trust.
¶23. In Dunaway v. Dunaway, 749 So.2d 1112, 1121 (¶ 28) (Miss.Ct.App.1999), this Court stated:
It is our conclusion that the chancellor, faced with proof from both parties that was something less than ideal, made valuation judgments that find some eviden-tiary support in the record. To the extent that the evidence on which the chancellor based his opinion was less informative than it could have been, we lay that at the feet of the litigants and not the chancellor.
In the current case, the chancellor was presented with evidence about the Living Trust from both Barbara and David. According to David, Barbara could ask the trustees to provide funds for her to maintain her standard of living. Barbara disagrees and claims she has no say in whether the trustees would permit payment to her. The parties disagreed as to how much interest Barbara could earn and how much she could take out without invading the Living Trust’s principal. Neither party produced a specific and reliable valuation of the Living Trust; therefore, the burden fell on the chancellor to, using the provided evidence, make a valuation of the Living Trust. Based on the conflicting evidence presented to him, he made a conservative valuation of the trust. We cannot find that he committed reversible error in that valuation.
¶ 24. This issue is without merit.
III. ALIMONY
¶25. Again, for the sake of judicial economy, we will address Issues 4 and 7 in this section.
¶ 26. Under Armstrong v. Armstrong, 618 So.2d 1278, 1280 (Miss.1993), chancellors apply the following factors when determining whether awarding alimony is appropriate and what amount, if any, should be awarded:
1. The income and expenses of the parties;
2. The health and earning capacities of the parties;
3. The needs of each party;
4. The obligations and assets of each party;
5. The length of the marriage;
6. The presence or absence of minor children in the home, which may require that one or both of the parties either pay, or personally provide, child care;
7. The age of the parties;
8. The standard of living of the parties, both during the marriage and *1126 at the time of the support determination;
9.The tax consequences of the spousal support order;
10. Fault or misconduct;
11. Wasteful dissipation of assets by either party; or
12. Any other factor deemed by the court to be “just and equitable” in connection with the setting of spousal support.
¶27. The chancellor provided a thorough analysis of these factors in his opinion, which we will describe further in detail when discussing Barbara’s argument that the chancellor erred in determining the appropriate amounts and types of alimony.

A. Permanent Periodic Alimony

¶ 28. Barbara argues that the chancellor erred in determining her alimony and applying the Armstrong factors. She claims that she “is entitled to permanent periodic alimony in a sufficient amount to allow her to continue to maintain the standard of living to which she has been accustomed during the marriage of the parties.” To support her argument, she describes several Armstrong factor and how the chancellor erred in applying those factors to her case.
¶ 29. The first factor is the parties’ incomes and expenses. Barbara argues that the chancellor improperly calculated David’s average monthly income by taking into account a decline in David’s business. As we have already addressed this issue in Section I of this opinion, we will not further elaborate. The chancellor did not err in determining David’s monthly income to be $19,000. Also under the first factor, Barbara alleges that the chancellor applied an erroneous legal standard by noting that both parties would have to adjust their monthly expenses as a result of the divorce. In Gray v. Gray, 562 So.2d 79, 83 (Miss.1990) (citing Massey v. Massey, 475 So.2d 802, 803 (Miss.1985)), the supreme court noted that when awarding alimony, the “chancellor should consider the reasonable needs of the wife and the right of the husband to lead as normal a life a possible with a decent standard of living.” The chancellor’s statement in the current case reflected this reasoning. Considering David’s decreased income, his ability to pay, and Barbara’s reasonable needs, the chancellor awarded her both permanent periodic alimony and rehabilitative alimony. We do not find that the chancellor committed any error in weighing this factor.
¶ 30. The second factor is the health and earning capacities of the parties. Barbara claims it was error for the chancellor to increase her earning capacity from what it currently was in light of her medical issues, age, and inexperience while decreasing David’s earning capacity from his past earnings even though he has no serious medical issues. While David’s health may not have decreased his earning capacity, the chancellor found that his earning capacity would be decreased by the loss of a substantial client. The chancellor also found that while Barbara’s health will impact her employment prospects, she is a licensed attorney with significant mediation experience, an interest in returning to work, and a need to return to work to support herself. We cannot find that he erred in his findings.
¶ 31. Third, the chancellor is to determine the needs of the parties. Barbara agrees with the chancellor’s finding that David has significant income to support himself, “while Barbara’s reasonable needs will still exceed her current income and future earning capacity.” The chancellor further noted that Barbara cannot support herself solely at this point and will *1127 need assistance to live a comfortable life. Barbara requested David maintain her health insurance, as her health issues will make obtaining coverage almost impossible or extremely expensive. We find that the chancellor considered Barbara’s needs when determining whether to award alimony and in what amount. Again, we do not find that the chancellor improperly considered this factor.
¶ 82. The next factor the chancellor considered is the obligations and assets of each party. Barbara’s arguments on this issue are that the chancellor erred in: his division of marital property; his valuation of the Living Trust; and his finding that Barbara’s total estate was nearly twice the size of David’s estate. The only argument that we have not previously addressed is the chancellor’s determination that Barbara’s estate was nearly double David’s estate. In his opinion, the chancellor stated that as a result of the equitable distribution of the marital property, both parties received significant assets both liquid and non-liquid in nature. Further, David had no separate estate, while Barbara had a substantial separate estate in addition to the assets she was awarded through equitable distribution. Barbara’s separate estate was valued at approximately $425,480.41 to $475,480.70, which is almost equal to David’s share of the marital estate. She additionally received approximately $450,836 in her share of the marital estate, for a total estate of between $876,316.41 and $926,316.70. A review of the record supports the chancellor’s findings.[3]
¶ 33. The eighth factor is the parties’ standard of living during the marriage and at the time of divorce. There is no doubt that the parties enjoyed a high standard of living during the marriage with many luxuries. The chancellor noted that neither party would be able to continue living at this particular standard due to the divorce and the decline in available income; however, both would still live a very comfortable lifestyle. Barbara argues that the chancellor was incorrect in determining that she would have to lower her standard of living, because there was no proof of David’s decline in income. Because we have addressed the chancellor’s determination of David’s income in Section I of this opinion, we decline to address it here. We find the chancellor properly weighed this factor when awarding alimony.[4]
¶ 34. Next, the chancellor considered the fault or misconduct of the parties. He acknowledged that David admitted fault and misconduct, but stated that “alimony is not ‘punishment’ for misconduct.” Barbara submits that this factor weighed in her favor and should have been considered in the chancellor’s award of alimony. We cannot find in the record where the chancellor did not consider this factor when awarding Barbara rehabilitative and permanent periodic alimony.
 ¶ 35. The eleventh factor to be considered when awarding alimony is whether there was a wasteful dissipation of assets by either party. “[T]he dictionary definition of ‘dissipate’ is: ‘To spend or expend intemperately or wastefully; squander.’ ” Smith v. Smith, 90 So.3d 1259, 1268 (¶ 37) (Miss.Ct.App.2011) (quoting The American Heritage Dictionary 539 (3d ed.1992)). The “ordinary and rea *1128 sonable living expenses used during separation generally do not constitute a dissipation of marital assets.” Faerber v. Faerber, 13 So.3d 853, 862 (¶ 34) (Miss.Ct.App.2009) (internal citations omitted). Barbara claims in Issue 4 that David dissipated marital- assets in a total amount of $239,732.70 over an eight-month period. She further asserts that David did this to prevent her from receiving an equitable share of the marital assets. Of that $239,732.70, David paid $83,053.75 to purchase and improve the Grayhawk home. Additionally, David made early tax payments for that year. David also bought a new car, which he claims was his usual practice after his warranty expired. Some of the expenditures during the eight-month period, such as attorney’s fees and contributions to Ole Miss athletics, were specifically taken into consideration by the chancellor and credited back to David’s estate. While the amount that David expended appears to be high, it includes the purchase of a house, moving expenses, furnishings for a house, attorney’s fees and trial expenses, prepayment of taxes, and a new car. The chancellor noted that he accounted for “the parties’ use and dissipation of assets in [the] equitable distribution of the marital property.” Based upon our review of the record, we cannot find that the chancellor erred.
¶ 36. The final factor to be considered is whether there is any other factor deemed to be just and equitable. The chancellor found that none were present; however, Barbara submits that the chancellor did not thoroughly consider her expenses in determining the amount of alimony, nor did the chancellor properly consider her potential earning capacity in conjunction with her illnesses. Because we addressed both issues in this section, we will not address these issues again.
¶ 37. In summary, after a thorough review of the record and the chancellor’s decision, we cannot find that the chancellor improperly weighed the Armstrong factors when awarding Barbara permanent periodic alimony.

B. Rehabilitative Alimony

¶ 38. Barbara also challenges the chancellor’s award of rehabilitative alimony of $2,000 per month for sixty months. Barbara asserts that the chancellor’s finding of her potential income to be $3,500 per month was severely out-of-line with her prior and current earnings and was not supported by evidence. She testified that her then-current monthly income was $648. Further, Barbara claims that her health issues, age, and inexperience as a lawyer would make it almost impossible for her to find employment that would provide her with $3,500 per month.
¶ 39. Rehabilitative alimony is not used to equalize the parties’ incomes, but is awarded to assist one party in rejoining the working world and becoming self-sufficient. See Rhodes v. Rhodes, 52 So.3d 430, 447 (¶ 72) (Miss.Ct.App.2011) (citing Lauro v. Lauro, 847 So.2d 843, 849 (¶ 15) (Miss.2003)); Hults v. Hults, 11 So.3d 1273, 1280 (¶ 30) (Miss.Ct.App.2009) (citing Holley v. Holley, 892 So.2d 183, 186 (¶ 11) (Miss.2004)). There was conflicting testimony at trial about the likelihood of Barbara securing full-time employment. One report presented indicated that Barbara could earn approximately $3,872 per month from her ADR business, while another report showed her annual earning capacity was between $80,000 and $162,900. Ultimately the chancellor found that “Barbara is a licensed attorney with significant mediation experience,” who is interested in working and needs to work. We do not disagree with the chancellor’s findings. Although Barbara’s health and lack of recent courtroom experience may *1129 limit her income, she is capable of going back to work and helping support herself. Therefore, the chancellor’s decision awarding Barbara $2,000 per month for sixty months (five years) was sufficient to help Barbara return to the work force. As such, we find no error in the chancellor’s award.
¶ 40. These issues involving the award of alimony are without merit.
IV. CHILD SUPPORT
¶ 41. On the issue of the amount of child support awarded, Barbara submits that the chancellor improperly deviated from the statute and awarded less than required by statute. Mississippi Code Annotated section 43-19-101(1) (Rev.2009) provides that fourteen percent of the pay- or’s adjusted gross income should be awarded for the benefit of one child. Mississippi Code Annotated section 43-19-101(2) (Rev.2009) permits the chancellor to deviate from the above percentage upon “a written finding or specific finding on the record that the application of the guidelines would be unjust or inappropriate[.]” Further, Mississippi Code Annotated section 43-19-101(4) (Rev.2009) provides that “[i]n cases in which the adjusted gross income ... is more than Fifty Thousand Dollars ($50,000.00) ..., the court shall make a written finding in the record as to whether or not the application of the guidelines established in this section is reasonable.”
¶ 42. In the current case, the chancellor deviated from the statutorily required amount of fourteen percent by awarding $400 per month in child support for Ann Hamilton, the only minor child the time of the divorce; Ann Hamilton has since reached the age of majority. In his written opinion, the chancellor found that Ann Hamilton had the use of a vehicle, an almost completed undergraduate degree, personal assets such as jewelry and clothes, and three bank accounts. He further wrote: “Taking into consideration the total available assets of David, Barbara[,] and Ann Hamilton, as well as the shared parenting arrangement, and Ann Hamilton’s current level of self-sufficiency, [the chancellor] finds that the application of the statutory guidelines is not reasonable.” We find that the chancellor did not exceed his authority in deviating from the statutory guidelines.
¶ 43. This issue is without merit.
V. ATTORNEY’S FEES
¶ 44. Barbara argues on appeal that the chancellor erred in failing to award her the cost of her attorney’s fees. She alleges that “[i]t was clearly error for the [chancery c]ourt to deny her request for [attorney’s fees,] which were substantially higher because of David’s pattern of deceit and delay tactics.... ”
¶ 45. The decision to award attorney’s fees is left to the discretion of the chancellor. Cheatham v. Cheatham, 537 So.2d 435, 440 (Miss.1988). Barbara relies on Holloway v. Holloway, 31 So.3d 57, 62-63 (¶¶ 19-23) (Miss.Ct.App.2009), to support her argument that David’s “deceit and delay tactics” caused her to incur more attorney’s fees and that he should pay them as a result. In Holloway, Joel Holloway appealed the chancellor’s award of attorney’s fees to Twyla Holloway. Id. at 62 (¶ 18). This Court affirmed the chancellor’s judgment because Twyla claimed she was unable to pay the fees herself and because Joel delayed trial on several occasions, resulting in additional attorney’s fees. Id. at 63 (¶ 23). Unlike Holloway, Barbara has a significant separate estate and marital assets; thus, she is financially able to pay her attorney’s fees. “[I]f a wife is financially able to pay her attorney, she is not entitled to an attorney’s fee award.” *1130 Cheatham, 537 So.2d at 440. There is no doubt that both parties accumulated large legal fees in this dispute; however, Barbara has presented no proof that she is unable to pay her fees or that paying her fees would deplete her estate. Without more, we cannot find that the chancellor abused his discretion in denying Barbara’s request for attorney’s fees.
¶ 46. This issue is without merit.
¶ 47. THE JUDGMENT OF THE HINDS COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
IRVING, P.J., BARNES, ISHEE, CARLTON, RUSSELL AND FAIR, JJ., CONCUR. LEE, C.J., GRIFFIS, P.J, AND MAXWELL, J„ NOT PARTICIPATING.

. At the time of the final judgment, Ann Hamilton was the only minor child. Mary Cameron had reached the age of majority.

. Barbara also argues that David's actual share of the marital estate should be $639,491 since the full price of the Grayhawk home of $311,000 should have been included in his marital estate instead of just the equity value. As we discuss in paragraph 18, the chancellor did not err in valuing and classifying the Grayhawk home; therefore, we will not address this point of her argument. According to the chancellor, the final sum of David’s share of the marital estate was $443,606 after $10,000 in Ole Miss tickets and $62,000 in attorney’s fees were credited to his estate.

. Barbara did not challenge the chancellor’s findings on factor five, the length of the marriage; factor six, the presence or absence of minor children in the home; and factor seven, the age of the parties.

. Barbara also did not challenge factor nine, the tax consequences.