# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2016-CA-01276-COA

**DENISE L. INGE**                                                                 **APPELLANT**

**v.**

**EVIE INGE**                                                                        **APPELLEE**

DATE OF JUDGMENT:           07/26/2016
TRIAL JUDGE:                HON. DOROTHY WINSTON COLOM
COURT FROM WHICH APPEALED:  OKTIBBEHA COUNTY CHANCERY
                            COURT
ATTORNEY FOR APPELLANT:     JAY HOWARD HURDLE
ATTORNEY FOR APPELLEE:      TAMEKIA R. GOLIDAY
NATURE OF THE CASE:         CIVIL - DOMESTIC RELATIONS
DISPOSITION:                AFFIRMED - 10/03/2017
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

### BEFORE IRVING, P.J., WILSON AND WESTBROOKS, JJ.

### WILSON, J., FOR THE COURT:

¶1.     Denise Inge filed for divorce in 2001 after twenty-five years of marriage to her husband, Evie. Evie thereafter moved out of the marital home. The case languished on the docket for over fourteen years until the parties consented to an irreconcilable differences divorce. They submitted the equitable division and distribution of the marital estate to the chancellor for determination. Following a hearing, the chancellor awarded each party his/her respective retirement account and awarded Denise the marital home upon payment of $45,000 to Evie for his interest in the home. On appeal, Denise argues that the chancellor ordered her to pay Evie too much and that the reasoning of the final judgment contains factual and legal errors. We find no reversible error and affirm.

**FACTS AND PROCEDURAL HISTORY**

¶2.     Evie and Denise were married in June 1976.  They had two children, who were born in 1979 and 1982.  Around June 2000, Evie moved out of the marital bedroom and into a separate bedroom.  In September 2001, Denise filed for divorce, and Evie moved out of the marital home shortly thereafter.  He lived with his brother for about three years and then purchased a home of his own.

¶3.     During the marriage, both parties worked.  Evie was a driver at UPS, and Denise was a welder at Babcock and Wilcox.  Evie continued to work at UPS until he retired in 2007 at age fifty-eight.  Evie now receives $3,050 per month in retirement from UPS and $1,875 per month from Social Security.  Because of carpal tunnel syndrome, Denise had to stop working in 2001 at age forty-seven.  She subsequently applied for and was awarded Social Security disability and receives disability payments of $1,528 per month.  At age sixty-five (beginning July 1, 2019), Denise will be eligible to receive monthly retirement payments of approximately $957.33 from her former employer.[1]

¶4.     No temporary order of support was ever entered after Evie moved out of the marital home.  However, for six years, Evie continued to make monthly mortgage payments on the marital home of $1,330.55 until the mortgage was paid off in October 2007.  Denise has continued to pay taxes and insurance on the home.  Evie also testified that, after he moved out, he cashed out a 401(k) account and gave Denise $16,000, which he says was to assist

---

[1] In the alternative, she was eligible to begin receiving monthly payments of $711.68 at age sixty-two (beginning July 1, 2016).

with their second child's college education. Denise testified, "I think it was [$10,000],"
which she said she needed for bills.

¶5.    The marital home appraised for $170,000 in 2015, and neither party disputes the
accuracy of the appraisal. Denise testified that she made improvements to the home in 2002
and again in 2013. The 2002 improvements consisted of painting and repairs to the interior
and exterior of the home and remodeling in the kitchen and bathrooms. Denise testified that
she paid her brother, a contractor, $21,110 for the work. The 2013 improvements consisted
of an enclosed garage, a sunroom, and new siding. Denise testified that she paid her brother
$19,650 for the work. Denise presented pictures and one-page summaries of the work
performed but no receipts or copies of checks.

¶6.    After Denise filed for divorce in 2001, the case languished on the docket for over
fourteen years with long periods of inactivity. Finally, in December 2015, the parties filed
a consent to an irreconcilable differences divorce and agreed to submit one issue to the court:
"The determination and an equitable division and distribution of the marital estate, including
but not limited to real estate and the parties' retirement . . . ."

¶7.    A hearing was held in December 2015 and April 2016, and the chancellor entered a
final judgment dividing the marital estate in July 2016. In the final judgment, the chancellor
conducted a *Ferguson*[2] analysis, awarded each party his/her respective retirement account,
and awarded Denise the marital home upon payment to Evie of $45,000 for his equity in the

---

[2] *Ferguson v. Ferguson*, 639 So. 2d 921 (Miss. 1994).

home. The judgment provides that if Denise opts not to buy out Evie, the home shall be listed for sale, and Evie will be entitled to $45,000 of the sale proceeds. Denise filed a timely notice of appeal from the final judgment.

## DISCUSSION

¶8. "When reviewing a decision of a chancellor, this Court applies a limited abuse of discretion standard of review." *Mabus v. Mabus*, 890 So. 2d 806, 810 (¶14) (Miss. 2003). "This Court will not disturb the chancellor's opinion when supported by substantial evidence unless the chancellor abused his discretion, was manifestly wrong, clearly erroneous, or an erroneous legal standard was applied." *Id.* at 819 (¶53). "When this Court reviews a chancellor's judgment of property division we 'are to review the judgment to ensure that the chancellor followed the appropriate standards and did not abuse his discretion.'" *McKnight v. McKnight*, 951 So. 2d 594, 596 (¶6) (Miss. Ct. App. 2007) (quoting *Wells v. Wells*, 800 So. 2d 1239, 1243 (¶8) (Miss. Ct. App. 2001)).

¶9. "[A]n equitable division of property does not necessarily mean an equal division of property." *Chamblee v. Chamblee*, 637 So. 2d 850, 863-64 (Miss. 1994). "[T]he goals of equitable distribution are a fair division of marital property based on the facts of each case and termination of the legal relationship in a manner which each party may realize self-sufficiency." *Seymour v. Seymour*, 960 So. 2d 513, 519 (¶15) (Miss. Ct. App. 2006). In *Ferguson*, the Supreme Court instructed chancellors to consider the following factors in the equitable division of marital property:

4

1. Substantial contribution to the accumulation of the property. Factors to be considered in determining contribution are as follows:

   a. Direct or indirect economic contribution to the acquisition of the property;

   b. Contribution to the stability and harmony of the marital and family relationships as measured by quality, quantity of time spent on family duties and duration of the marriage; and

   c. Contribution to the education, training or other accomplishment bearing on the earning power of the spouse accumulating the assets.

2. The degree to which each spouse has expended, withdrawn or otherwise disposed of marital assets and any prior distribution of such assets by agreement, decree or otherwise.

3. The market value and the emotional value of the assets subject to distribution.

4. The value of assets not ordinarily, absent equitable factors to the contrary, subject to such distribution, such as property brought to the marriage by the parties and property acquired by inheritance or inter vivos gift by or to an individual spouse;

5. Tax and other economic consequences, and contractual or legal consequences to third parties, of the proposed distribution;

6. The extent to which property division may, with equity to both parties, be utilized to eliminate periodic payments and other potential sources of future friction between the parties;

7. The needs of the parties for financial security with due regard to the combination of assets, income and earning capacity; and,

8. Any other factor which in equity should be considered.

*Ferguson*, 639 So. 2d at 928.

¶10. The chancellor's final judgment in this case specifically addressed *Ferguson* factors 1 through 6, and for the most part Denise takes no issue with the chancellor's findings. The chancellor's *Ferguson* analysis fairly and appropriately considered that both parties worked during the marriage and contributed equally to the acquisition of marital property; that Evie left the marital home and refused Denise's request to go to marital counseling; that both parties had contributed to the value of the home; "that Denise has an emotional attachment to the home"; and that Evie has his own home, valued at $74,500, which is his separate property and is not subject to equitable division.

¶11. However, Denise argues that the chancellor's equitable division should be reversed because the chancellor failed to discuss factor 7, erred in her discussion of factor 2, and failed to properly value or account for the parties' retirement accounts. She argues that the errors resulted in her being required to pay Evie too much for his equity in the marital home. We address these arguments in turn.

¶12. Denise first argues that the chancellor failed to consider *Ferguson* factor 7: "[t]he needs of the parties for financial security with due regard to the combination of assets, income and earning capacity." *Id*. It is true that the chancellor's opinion omits specific discussion of this factor; however, the chancellor did address factor 6, which is closely related: "[t]he extent to which property division may, with equity to both parties, be utilized to eliminate periodic payments and other potential sources of future friction between the parties." *Id.* The need for alimony arises only "[i]f the equitable division of property leaves"

one spouse with insufficient "resources and assets to meet his or her needs and living expenses." *Jackson v. Jackson*, 114 So. 3d 768, 777 (¶22) (Miss. Ct. App. 2013). Therefore, factor 6 necessarily implicates the parties' needs for financial security and is closely related to factor 7.

¶13. "Moreover, this Court has held that failure to make an explicit factor-by-factor analysis does not necessarily require reversal where we are satisfied that the chancellor considered the relevant facts." *Seghini v. Seghini*, 42 So. 3d 635, 641 (¶21) (Miss. Ct. App. 2010) (citing *Palmer v. Palmer*, 841 So. 2d 185, 190 (¶18) (Miss. Ct. App. 2003)). Here, we are satisfied that the chancellor considered the relevant factors and both parties' needs in equitably dividing the marital property. Denise argues that she has limited income compared to Evie and cannot afford to pay him for his interest in the home. However, the chancellor's ruling took the parties' relative financial positions into account by requiring Denise to pay Evie less than twenty-seven percent of the home's $170,000 value.

¶14. In addition, in *Everett v. Everett*, 919 So. 2d 242 (Miss. Ct. App. 2005), this Court recognized that when the marital home is unencumbered by a mortgage, the equity in the home may provide a means for one party to buy out the other's interest in the home. In *Everett*, the chancellor awarded the husband the marital home, with a value of $140,250, but ordered him to pay the wife $49,293.50 for her equity. *Id.* at 245 (¶¶8-9). On appeal, the wife argued that she should have been awarded the home because the husband lacked the income or other resources to pay her that amount. *Id.* at 246 (¶13). However, this Court

7

found that the chancellor did not abuse his discretion given the husband's "strong emotional attachment to the home" and desire to remain there. *Id.* at (¶14). This Court also reasoned that "[t]he marital domicile [was] free of any mortgages," so the husband could "mortgage the property, if necessary, to comply with the chancellor's order." *Id.* at (¶15).

¶15. Likewise in this case, the property is free of any mortgage. Indeed, the property is unencumbered precisely because Evie continued to pay the mortgage for six years even after he moved out of the marital home. Therefore, as in *Everett*, Denise may mortgage the home if necessary to comply with the chancellor's order. At trial, Denise acknowledged that Evie "has an interest" in the home because "[h]e paid for it." She also acknowledged that, as recently as two years prior to trial, she was able to pay $19,650 for additions and improvements to the home. Under the circumstances, the chancellor sufficiently considered Denise's financial situation by requiring Denise to pay Evie less than twenty-seven percent of the home's value. We find no abuse of discretion on this issue.

¶16. Denise next argues that the chancellor erred under *Ferguson* factor 2 in finding as follows: "Both parties withdrew lump sums from their retirement accounts while separated and chose to receive the balance in monthly payments. Denise withdrew $23,000.00 while Evie withdrew $41,000.00." As to Evie, the chancellor's statement was accurate. Evie liquidated a retirement account and gave either $10,000 (according to Denise) or $16,000 (according to Evie) of the funds to Denise. However, Denise testified that the $23,000 "lump sum" that she received was not from a retirement account but for disability payments she was

8

owed upon her disability determination. And although the record is less than clear on this point, Evie concedes that the chancellor did mischaracterize this payment.

¶17. Nonetheless, we agree with Evie that the error does not require reversal. Due to the number of years this case lingered on the docket, the error relates entirely to a sum that Denise received more than a decade prior to trial. The issue does not affect the parties' present financial situations, the chancellor attributed no particular weight to the payment, and there is no indication that this issue impacted her ultimate decision. In short, this mistake was harmless. *See Hill v. Johnson*, 27 So. 3d 426, 430 n.2 (Miss. Ct. App. 2009) (concluding that errors in the chancellor's findings of fact were "harmless error as they ha[d] no bearing on the ultimate disposition of the case").

¶18. Finally, Denise argues that the chancellor erred by not making on-the-record findings of fact concerning the value of the parties' respective vested retirement benefits. However, we disagree that any additional findings were necessary. The chancellor recognized that the parties' retirement benefits were marital assets.[3] And although Evie was awarded the full value of his relatively larger retirement benefits, Denise was awarded more of the value of the marital home. "[I]n cases of equitable distribution, we do not look at the division of one asset in isolation, but rather, whether the marital assets as a whole were divided equitably."

---

[3] Denise notes that paragraph 10 of the final judgment inaccurately states that the marital home was "the parties' sole asset." However, in paragraph 12 on the same page, the chancellor specifically found "that the marital home *and the parties' retirement accounts* are martial assets." (Emphasis added). Moreover, the judgment concluded as follows: "[T]he Court finds the following division of *marital assets* is fair and equitable: . . . (b) Both parties are awarded their respective retirement accounts." (Emphasis added).

*Dogan v. Dogan*, 98 So. 3d 1115, 1124 (¶20) (Miss. Ct. App. 2012). In the present case, the chancellor did not abuse her discretion in specifically finding that the division of assets *as a whole* was fair and equitable.

¶19. Moreover, to the extent that Denise's complaint is that the chancellor failed to make findings as to present values of the parties' respective future benefits, we simply note that Denise failed to present such evidence or calculations. The chancellor is not expected to go beyond the evidence that the parties present in order to value the marital assets. *See Pruitt v. Pruitt*, 144 So. 3d 1249, 1252-53 (¶11) (Miss. Ct. App. 2014). The chancellor received evidence of the future payments that each party could expect to receive under their respective retirement plans and concluded that it was fair and equitable for each party to keep his/her own benefits. Again, we cannot say that the chancellor abused her discretion. The division of assets, as a whole, was fair and equitable. *Dogan*, 98 So. 3d at 1124 (¶20).

¶20. In summary, we find no abuse of discretion or reversible error in the chancellor's equitable distribution of the marital assets.

¶21. **AFFIRMED.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, CARLTON, FAIR, GREENLEE AND WESTBROOKS, JJ., CONCUR.**